CELLULOID MANUF'G CO. *v.* ZYLONITE BRUSH & COMB CO. and others.[1]

*(Circuit Court, S. D. New York, 1886.)*

1. PATENTS FOR INVENTIONS—SECOND REISSUE TO REINSTATE ORIGINAL CLAIMS.
    The question whether a reissue is valid which is granted merely to reinstate a patentee to an invention he had surrendered in order to obtain a wider monopoly than that covered by the original, decided in the affirmative; following the ruling in *Giant Powder Co.* v. *Safety Nitro-Powder Co.*, 19 Fed. Rep. 509, where the facts were strictly similar to those in this case.

2. SAME.
    The fact that a second or subsequent reissue is taken in order to reinstate the specification and claims of the original precludes the assumption that the original was invalid or inoperative.

3. SAME.
    By accepting a reissue containing the same claims as the original, the patentee declares, in a formal and deliberate manner, that as to the invention which he now claims the original patent was not inoperative or invalid.

4. FIRST REISSUE VOID IF IDENTICAL WITH ORIGINAL.
    It would not seem doubtful that if the first reissue had been identical with the original in the specification and claim it would have been void.

5. SAME.
    In such a case the original patent would have been abandoned, and the reissue would have been a nugatory grant, because the statutory conditions did not exist which are precedent to the exercise of the power of granting reissues.

6. SAME—REISSUE WITH ORIGINAL AND ADDITIONAL CLAIMS.
    Whether a reissue which reinstates the original claims, and inserts additional claims, not contained in the original, is valid even as to the original claims, and the effect of delay in applying for such a reissue, are difficult questions, decided in this case on the rule of comity.

7. COMITY, RULE OF.
    Whatever conclusion might have been reached by this court if the questions presented had not been considered and determined by another court of coordinate jurisdiction, *held,* the decision of the latter court was entitled to great respect, and should be followed.

8. SAME.
    It would be unseemly that one rule of property in patents should prevail in one part of the country, and another in other parts, where the same title may be brought into litigation. In such cases the question should be remitted for final decision to the court of last resort.

This was a bill for infringement of reissued letters patent to John W. Hyatt, Jr., and Isaiah S. Hyatt, assignors, for improvement in treating and moulding pyroxyline. The reissue sued on was the third

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

of the original, which was granted July 12, 1870. The first reissue was granted June 23, 1874, the second April 15, 1884, and the third, the one in suit, December 23, 1884. None of the claims of the original patent were retained in the first reissue; the second reissue contained only one claim of the original; and the two claims of the third reissue, and the specification, so far as it related to these two claims, were the same as the original. These several reissues were set up by plea, and the plea being set down for argument, the questions, were, whether a reissue is valid which is granted merely to reinstate a patentee to an invention which he has surrendered in order to obtain a wider monopoly than he had obtained, and, if such a reissue is valid under any circumstances, whether it is so after such a delay as had taken place in this case.

*Rowland Cox*, for complainant.

*H. M. Ruggles* and *Thos. W. Osborn*, for defendants.

WALLACE, J. The defendant has interposed a plea to the bill of complaint, and the plea has been set down for argument. The suit is brought upon reissued letters patent granted December 23, 1884, to John W. Hyatt, Jr., and Isaiah S. Hyatt, assignors, for improvement in treating and moulding pyroxyline. It appears by the plea that the original patent was granted July 12, 1870; that an application was made for a reissue May 26, 1874, and a reissue was granted June 23, 1874; that an application was made for a second reissue March 10, 1884, which reissue was granted April 15, 1884; and that an application was made for a third reissue November 26, 1884, and a reissue was granted December 23, 1884. The plea sets forth the original patent and the several reissues in full. The original patent contained three claims; the first reissue contained five claims; the second reissue contained three claims; and the last reissue contains two claims.

The general nature of the invention was described in the specification of the original patent as follows:

"Our invention consists—*First*, of so preparing pyroxyline that pigments and other substances in a powdered condition can be easily and thoroughly mixed therewith before the pyroxyline is subjected to the action of a solvent; *secondly*, of mixing with the pyroxyline so prepared any desirable pigment, coloring matter, or other material, and also any substance in a powdered state which may be vaporized or liquified, and converted into a solvent of pyroxyline by the application of heat; and, *thirdly*, of subjecting the compound so made to heavy pressure while heated, so that the least practicable proportion of solvent may be used in the production of solid collodion and its compounds."

This description indicates sufficiently for present purposes what the invention was essentially. In the specification of the first reissue much additional explanatory matter was inserted for the purpose, obviously, of laying a foundation for more expanded claims than those of the original patent. In the specification of the second reissue this additional explanatory matter was mainly omitted, so that the specification read like that of the original patent, with some trifling and

immaterial changes. The specification of the third reissue is practi-cally identical with that of the original patent, except that it disclaims the invention which was the subject of the first claim in the original.

The claims of the original patent were as follows:

"Grinding pyroxyline into a pulp, as and for the purposes described. (2) The use of finely communicated camphor gum, mixed with pyroxyline pulp, and rendered a solvent thereof by the application of heat, substantially as described. (3) In conjunction with such use of camphor gum, the employ-ment of pressure, and continuing the same until the mould and contents are cooled, substantially as described."

The claims of the first reissue were as follows:

"(1) The combination of pyroxyline with camphor gum, or any equivalent converting agent, in such manner that the transforming action of the con-verting agent is kept latent, substantially as and for the purpose set forth. (2) The method, substantially as herein described, of developing the latent power of the converting agent by the application of heat to a mixture of pyroxyline and gum camphor, or its equivalent, for the purposes set forth. (3) The method, substantially as herein described, of making solid collodion, by subjecting a mixture of pyroxyline and a latent solvent to heat and press-ure. (4) The method, substantially as herein described, of converting pyroxyline into solid collodion, by the use of solid solvents. (5) The new material herein described, consisting of pyroxyline and gum camphor, or its equivalent, with or without the addition of other substances to increase its body or change its color, the same being capable of being softened by heat and remodeled or formed, as described."

The claims of the second reissue were as follows:

"(1) The process of preparing pyroxyline, consisting of grinding the pyroxyline into a pulp, and, after mingling therewith a solvent, subjecting the mixture to heat and pressure, substantially as and for the purpose described. (2) The use of finely comminuted camphor gum mixed with pyroxyline pulp, and rendered a solvent thereof by the application of heat, substantially as de-scribed. (3) The treatment of pyroxyline pulp containing camphor mixed therewith, in a finely-divided condition, by subjecting the same to pressure in moulds, and continuing the pressure until the mould and its contents are cooled, substantially as described."

The claims of the reissue in suit are in identical language the second and third claims of the original patent.

The plea raises the questions whether a reissue is valid which is granted merely to reinstate a patentee to an invention or inventions which he has surrendered in order to obtain a wider monopoly than he had obtained; and if such a reissue is valid under any circum-stances, whether it is so after such a delay as has taken place here.

It will be observed that none of the claims of the original patent were retained in the first reissue; that nearly 10 years expired before that reissue was surrendered, and the application was made for the second reissue; that in the second reissue only one claim was the claim of the original patent, that being the second claim, and iden-tically the second claim of the original; and that in the third (the present) reissue the two claims, and the specification so far as it relates to these claims, are the same as the original patent. Thus it ap-

pears that, after waiting four years, the original patent was surrendered upon the assertion of the patentee that it did not properly describe or claim his real invention, and that the omission arose from inadvertence, accident, or mistake, and that his real invention was in fact a broader one than he originally supposed. Then, for 10 years subsequently, the patentee rested upon the assumption that the original mistake had been rectified, and that he was justly entitled to the broader monopoly of the first reissue. Finally, and now, he asserts that although for 10 years he had supposed that the original error had been corrected, and his invention been properly described and claimed in the first reissue, nevertheless he now finds that the reissue was invalid because the claims were broader than he was lawfully entitled to hold against the public; that the error arose from inadvertence, accident, or mistake; and that, in fact, the invention which he is lawfully entitled to hold had been properly described and claimed in his original patent 14 years before. The patentee may have supposed when he surrendered his original patent that it did not contain as broad claims, or claims for as many different inventions, as he was entitled to; he may have supposed when he surrendered the first reissue that it was invalid because the claims were too broad, and he probably surrendered it for this reason; he may have supposed when he surrendered the second reissue that it contained one claim which was void for want of novelty; but, as a matter of fact, the original patent described and claimed both of the inventions which are now secured to him in all their parts by a correct specification, and by claims which were unambiguous and apt.

The facts disclosed upon the record preclude the assumption that the original patent was invalid or inoperative to secure to the patentee his present claims by reason of a defective or insufficient specification, or by reason of his claiming as his own invention more than he had a right to claim as new; or that there was any error in the specifications or claims, so far as they relate to his present rights, which arose from inadvertence, accident, or mistake. Such an assumption cannot be indulged, but is overthrown by a comparison of the several patents. Each claim of a patent covers a complete invention, and is, in substance, an independent patent; and as respects the two inventions covered by the claims of the present reissue the specification and claims are identical with those of the original. The original was therefore as operative and valid in all respects as is the last reissue, and, by accepting the present reissue, he has declared, in a deliberate and formal manner, that as respects both of the inventions which he now claims the original patent was not inoperative or invalid.

It would not seem doubtful that if the first reissue had been identical with the original in the specification and claims, that it would have been invalid. The original patent would have been abandoned, (*Peck* v. *Collins*, 103 U. S. 660; Rev. St. § 4916,) and the reissue would

have been a nugatory grant because the statutory conditions did not exist which are precedent to the exercise of the power of granting reissues.

But it may be urged with force that the original patent was inoperative or invalid to secure to the patentee all that he had really invented, and had described or substantially indicated in the specification of the original, so that he was entitled to a new one, with broader claims, or would have been if he had not delayed in his application unduly; and this being so, that the reissue was not void as an unauthorized exercise of the statutory power, but only invalid to the extent of the new and broader claims; and that it was competent for the commissioner to correct the error of law by a new reissue which would reinstate the patentee in what rightfully belonged to him before. Whether this contention is correct, and, if so, whether the error can be corrected after the expiration of so long a period as intervened in this case, are questions of much difficulty.

The facts presented by the record are so strictly similar to those in *Giant Powder Co.* v. *Safety Nitro-Powder Co.*, 19 Fed. Rep. 509, that the decision there is directly and completely in point here against the sufficiency of the plea. Whatever conclusion might have been reached if the question now raised had not been considered and determined by another court of co-ordinate jurisdiction with this, that decision is entitled to great respect, and should be followed now. It would be unseemly that one rule of property in patents should prevail here, and another in other parts of the country, where the same title may be brought into litigation. The question should be remitted for final decision to the court of last resort.

The plea is overruled.