CENTRAL FOUNDRY CO. v. COUGHLIN.

(Circuit Court of Appeals, Fifth Circuit. December 5, 1905.)

No. 1,468.

**1. PATENTS—INFRINGEMENT—IMPROVERS.**

Where a patent is for an improvement on a known machine by a mere change of form or a new combination of parts, the patentee cannot invoke the doctrine of equivalents to establish infringement by another, who has also improved the original machine by the use of a different form or combination performing the same functions.

**2. SAME—FOUNDRY LADLE.**

The Coughlin patent, No. 553,055, for a foundry ladle divided into compartments, each compartment having a detachable pouring spout attached to the body of the ladle by means of flanges, covers a new combination of parts, the most of which are old, its principal features being the partitions and removable spouts; and it is not infringed by a ladle which has neither the partitions nor spouts described in the patent.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

John P. Tillman and W. P. Preble, for appellant.
J. A. Estes, for appellee.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

SHELBY, Circuit Judge. This was a suit in equity brought by William T. Coughlin against the Central Foundry Company, a corporation. The suit is for an infringement of letters patent No. 553,055, issued to the complainant. The case was tried on its merits, and the Circuit Court entered a decree for the complainant, directing the statement

of an account to ascertain the complainant's damages, and granting a perpetual injunction. The defendant appealed, and the decree granting relief to the complainant is assigned as error.

The invention in question in this case relates to improvements in foundry ladles. Ladles for handling molten metal have been in use for many years. It is usually an iron or steel vessel of such size as circumstances may require, with a spout or nozzle from which to pour the molten metal. The ladle is ordinarily used by letting the metal run into it from the furnace, and it is then carried by an overhead trolley, or other device, to the mold in which the casting is to be made. The metal is then poured from the ladle into the gates or openings of the mold.

The patent in question was issued to the complainant January 14, 1896. The ladle, with the improvements claimed, is shown by the figures 1 to 5, inclusive, which accompany the specifications:

The specifications forming a part of the patent show that the ladle has a number of spouts, so as to permit it to pour into a series of molds at the same time from a series of compartments into which it is divided. It is further shown that the object of the invention is to provide an oblong foundry ladle having a series of pouring spouts extending upward on one side of the body, and a series of pouring apertures leading to the spouts and formed near the bottom; the ladle being provided with a series of detachable pouring spouts on the sides, and with one or more partitions in the body or shell. The shell, A, is made of metal, and this shell is provided with one or more cross partitions, B, with

apertures, C, best shown in figure 3. The apertures are provided in these partitions, B, to allow the metal to flow from one compartment to another to equalize itself in the ladle. A suitable suspension device and handles are attached. A series of metallic flanges, I, are attached to the other side of the ladle, and are bent to form a groove between one edge and the shell. These flanges are attached in pairs having the grooves facing each other, and are made slightly tapering toward the bottom. A pouring aperture, J (figures 3 and 4), is provided in the side of the ladle near the bottom, and between each pair of flanges, to permit the molten metal to flow from the ladle spouts. These detachable spouts, K, are made of metal, and provided with side flanges, L, adapted to fit the groove between the flanges, I, and the sides. This construction allows the removal or replacing of the spouts at will to replace a damaged spout, or for other purposes. The inside of the ladle, including partitions and spouts, is lined with fire brick, M, fire clay, or other suitable noncombustible material. In use the ladle, when filled or partly filled with molten metal, is turned on its pintles, H, H, for the purpose of tipping it, and to cause the molten metal to flow through the spouts into a number of molds; the number of molds and the gates in the same corresponding to the number and positions of the spouts of the ladle, so that at the same time a number of molds can be filled.

At the time this patent was granted, January 14, 1896, the development of the art in question was such that the inventor could lay no just claim to having invented all the devices shown in his specifications. On this point the record shows no controversy. It is well known that overhead trolleys and foundry ladles were in general use. Prior patents are in evidence, showing long-bodied ladles with several spouts (No. 370,159); and one (No. 361,352) showing a ladle in which a partition is set, which divides the ladle into two parts; and one (No. 330,003) which shows a detachable spout for milk pails; and one (No. 377,747) which shows a foundry ladle with a projecting trough spout and a flanged sliding partition, which is removable; and one (No. 540,-292) which shows a foundry ladle with a nozzle near the upper edge, held on by clamps and detachable. These older patents are offered by the defendant to show that there is nothing new in many of the ideas suggested by the specifications. This position of the defendant is conceded by the complainant, for he seeks to maintain the validity of his patent by the contention that it is a patentable combination of well-known devices.

We approach the real controversy in the case when we note the single claim made by the inventor at the conclusion of his specifications:

"What I claim as new, and desire to secure by letters patent, is: In a foundry ladle, the combination of the shell, A, having cross partitions, B, secured therein, the partitions provided with an aperture, C, a series of flanges, I, rigidly attached to the outside of the shell, the flanges forming grooves to attach the tapering spouts, K, the spouts having flanges, L, L, formed on the sides, the flanges adapted to enter the grooves; substantially as described."

In plainer words, the claim is for a combination—a foundry ladle with cross-partitions, each with an aperture; the ladle having flanges

attached to its side, forming grooves for a series of side flanges for the purpose of holding the detachable spouts on the sides of the ladle in such manner that they can be readily removed. The leading or most prominent features or devices of the combination claimed as new are the partitions and the removable spouts or nozzles.

The patent in question is for the combination described in the specifications and stated in the claim. A combination is an entirety. If one of its elements is omitted, it ceases to exist. It is well settled, therefore, that the omission of any one ingredient of the combination covered by the claim of the patent averts any charge of infringement based on such claim. Prouty v. Draper, 16 Pet. 336, 10 L. Ed. 985; Black Diamond, etc., Co. v. Excelsior Coal Co., 156 U. S. 611, 15 Sup. Ct. 482, 39 L. Ed. 553. The patent being for the combination, it cannot be doubted that, to make a case of infringement, it must be shown that the defendant has used, or is using, every ingredient of the combination. Walker on Patents, § 349, and cases cited in note 2. The evidence, so far from showing this, shows that the defendant does not use any of the devices covered by the patent. Instead of using the partitions described in the patent, the defendant strengthens its ladle by two iron bars extending across it, and, instead of using removable spouts or nozzles fastened by flanges in grooves, it uses spouts fastened in some part by clamps, or it uses those fastened by a bolt passed through the walls of the ladle. The evidence, in brief, shows that the complainant's invention was used with the complainant's acquiescence for a short time, but that it was abandoned before the suit was brought; the defendant being notified that the complainant no longer acquiesced in its use.

But the complainant seeks to avoid the effect of the foregoing principles by insisting that the several devices used by the defendant are the equivalents of certain parts of the combination patented. An equivalent is defined as a thing which performs the same function, and performs that function in substantially the same manner, as the thing of which it is alleged to be an equivalent. But in the application of rules on the subject we must have in view the patent alleged to be infringed. If it is for a primary invention—one which performs a function never performed by an earlier invention—the patentee will have the right to treat as infringers those who make or use machines operating on the same principle and performing the same functions by analogous means or equivalent combinations, even though the infringing machine may be an improvement of the original. But if the invention is a secondary invention (like the one at bar, if we concede all that is claimed for it)—that is, one which performs a function previously performed by earlier inventions, but which performs that function in a substantially different way from any which preceded it; an improvement on a known machine by a mere change of form or a new combination of parts—the patentee cannot treat another as an infringer who has improved the original machine by the use of a different form or combination performing the same functions. The first inventor of improvements cannot invoke the doctrine of equivalents and suppress all other improvements. Walker on Patents (4th Ed.) § 359, and cases cited. For stronger reasons, the

first inventor of an improvement in a machine cannot prevent another from using the old machine without the improvements.

It is true that a combination patentee may in a proper case claim the benefit of equivalents; that a defendant cannot adopt and use the combination, and avoid liability for infringement by making a substitute of some other device for one of the things used in the combination. Such a substitution, it is well settled, would not avoid the charge of infringement. Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945. But the case at bar does not fall within the influence of that principle. The defendant does not use all of the improvements claimed as the combination, omitting one and using a substitute for that. The defendant uses different devices altogether; the ladle used by it having none of the improvements claimed. To carry the doctrine of equivalents to the length contended for would make the granting of a combination patent for a machine confer on the patentee, not only the right to enjoin others from using his patent, but also the right to enjoin others from using all old and well-known machines, in use at the time the patent was granted, intended to effect the same results produced by the new invention. If it be conceded that the complainant has a valid combination patent for improvements on foundry ladles—a question which we do not decide—it does not deprive the defendant or others of the right to use foundry ladles which do not embrace the combination claimed in the complainant's patent.

The decree of the Circuit Court is reversed, and the cause remanded, with instructions to dismiss the bill.