XXTH CENTURY HEATING & VENTILATING CO. v. TAPLIN, RICE-CLERKIN CO.

(Circuit Court of Appeals, Sixth Circuit. June 7, 1910.)

No. 2,012.

1. PATENTS (§ 165*)—CONSTRUCTION.

The rule is that each claim of a patent covers a complete invention, and is in substance an independent patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

2. PATENTS (§ 168*)—CONSTRUCTION—EFFECT OF ACQUIESCENCE IN REJECTION OF CLAIMS.

If a claim of a patent is itself so changed through action of the Patent Office as to limit it to a particular means for performing a function, acquiescence therein by the inventor estops him from claiming any different device as an infringement, and also acquiescence in the rejection of certain claims for "means" generally, and the allowance of claims describing specific means precludes a construction of such claims which would include other means.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½–244; Dec. Dig. § 168.*]

3. PATENTS (§ 328*)—INFRINGEMENT—FURNACE GRATE.

The Maag patent, No. 707,855, for a furnace grate consisting of two parts pivotally connected, the front one of which can be lowered in front to permit of cleaning, in view of the proceedings in the Patent Office, is limited to a construction in which such lowering is done by a swinging bail, the turning of which lowers or raises the shaker arm attached to the front section of the grate, sustaining it in each position. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

In Equity. Suit by the XXth Century Heating & Ventilating Company against the Taplin, Rice-Clerkin Company. Decree for defendant, and complainant appeals. Affirmed.

This is an appeal of complainant below as assignee of G. Maag, patentee, from a decree dismissing the bill of complaint. The suit was for alleged infringement of letters patent on a furnace grate No. 707,855, issued to Maag August 26, 1902. It was held that the defendant had not infringed. It is stated in the specification that " * * * the objects of my invention are to produce a grate which can readily and easily be cleared from accumulated ashes and the like, and one in which all parts are readily accessible; and a further object is to make the front portion of the grate capable of being low-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

ered when desired, and finally to pivot the grate so that its entire surface is easily capable of being rotated."

The drawings accompanying the specification are as follows:

Fig.1.   Fig.2.

Fig.3.

Fig.4.

These drawings may be easily interpreted with the aid of a slight addition to a short description furnished by appellant's counsel, who states that the construction of the patent " * * * consists of a circular grate made in two sections pivotally hinged together, the rear section, 4, of which is always retained in horizontal position, while the front section, 5, is hinged to the rear section and provided with a shaker arm, 9, so that said front section can be lowered or inclined sufficiently to permit of the cleaning out of clinkers without dumping the contents of the firepot. The entire grate oscillates during the ordinary shaking operation about a pivot-pin, 6, on the under side of the rear section, 4, which is journaled in a bearing, 3, at the front end of a fixed supporting-arm, 2, beneath the grate."

The hinged section 5 and its shaker arm, 9, are supported alike in their horizontal and lowered positions by a swinging bail, 11. The swinging bail is mounted in the doorway of the ash-pit on journals, 10. When the bail is in

its normal position the arm, 9, and the entire upper surface of the grate are in one plane. It is stated in the specification: "The dumping portion, 5, of the grate is lowered into the position shown by dotted lines in Fig. 3 by giving a semirotation to the bail, 11, which permits the arm, 9, and the dumping portion to be lowered or inclined toward the doorway of the ash-pit, but retains it there from complete descent to the ground line."

The letters patent as issued contain two claims:

"1. The combination in a grate for furnaces and stoves, consisting of a two-part grate pivotally hinged together, a pivot for the entire grate mounted on one of said portions, an arm mounted on the other portion and means as a swinging bail to vary the inclination of one of said portions.

"2. The combination in a grate for furnaces and stoves of a two-part grate a lever mounted on one of said parts a swinging bail mounted in said ash-pit arranged when swung in one position to keep said grate level, and when swung in the other direction to lower one of the portions of said grate into an inclined position."

W. A. Owen, for appellant.

G. W. Rea, for appellee.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The court below regarded the invention in suit as of doubtful patentability and at most as entitled only to a narrow construction. The alleged infringing device was never patented. It is not necessary to describe defendant's grate further than to say that it is a two-part grate, and, it must be said, is similar in construction and operation to the patent in suit, except as to the method of sustaining and operating the projecting shaker arm. The point of difference between the two devices upon which the trial court rested its decree of noninfringement, was in the means adopted respectively for sustaining in horizontal position and also in lowering the dumping portions and shaker arms of the two devices. The dumping portion and the shaker arm of defendant's grate are held in normal or horizontal position by the co-operation of a hook-shaped lug, cast as part of the upper surface of the shaker arm, with a segmental flange cast integrally with the upper and exposed surface of the ash-pit. The flange is long enough to admit of rotating the grate by moving the arm back and forth while its lug engages the flange; but when the arm is moved beyond either end of the flange, there is nothing to prevent the arm from dropping to the ground line.

In determining the scope of the patent in suit and its alleged infringement, it is necessary under one of the defenses set up in the answer to examine into the history of the application as it is revealed by the file wrapper of the Patent Office. Maag's original application contained nine claims, as follows:

"1. A grate for furnaces and stoves consisting of two parts pivotally attached to one another, one of said portions capable of being inclined, the other portion being pivoted to permit horizontal rotation to both portions in unison, substantially as shown and described.

"2. The combination in a grate for furnaces and stoves, of an ash-pit, an arm projecting into said ash-pit, a bearing mounted in the end of said arm, a grate made in two pieces, one whereof is arranged to pivot on the said bear-

ing, trunnions on said pivoted portion, and means to connect said other portion of said grate with said pivoted portion.

"3. The combination in a grate for furnaces and stoves consisting of two portions pivotally united, means to sustain one part of said grate, and means to permit one part of said grate to be inclined downward.

"4. The combination in a grate for furnaces and stoves of an enclosing ash-pit, a bearing mounted on an arm projecting from said ash-pit, a grate made in two portions arranged to pivot horizontally on said bearing, means to connect said portions of said grate pivotally together, and means for raising and lowering one of said portions, substantially as shown and described.

"5. The combination in a grate for furnaces and stoves, consisting of a two-part grate pivotally hinged together, a pivot for the entire grate mounted on one of said portions, an arm mounted on the other portion and means as a swinging bail to vary the inclination of one of said portions.

"6. The combination in a grate for furnaces and stoves consisting of two parts, the two parts whereof are pivotally hinged together, a pivot mounted on one of said parts to permit horizontal rotation of both parts in unison, and means to permit the inclination of the other part of said grate, substantially as shown and described.

"7. The combination in a grate for furnaces and stoves consisting of an enclosing ash-pit, an arm mounted on the interior of said ash-pit, a bearing on said arm, a two-part grate, a pivot on one of said parts to enter said bearing, a lever mounted on the other part, and means to vary the vertical inclination of said lever.

"8. The combination in a grate for furnaces and stoves of a two-part grate a lever mounted on one of said parts a swinging bail mounted in said ash-pit arranged when swung in one position to keep said grate level and when swung in the other direction to lower one of the portions of said grate into an inclined position.

"9. The combination in a grate for furnaces and stoves of a two-part grate, one portion whereof is arranged to pivot on a supporting arm, the other designed to be vertically inclined as desired and a supporting arm to sustain said pivoted portion, substantially as shown and described."

Only two of these claims were ultimately allowed; omitting intermediate changes in numbers, the two allowed were original numbers 5 and 8, now claims 1 and 2 as they appear in the statement. All the claims were rejected by the examiner on reference to the Goodenow patent, No. 369,334, dated September 6, 1887, entitled "Grates Rotary." Thereupon Maag through his counsel canceled original claims 1, 3, and 6, and stood on claims 2, 4, 5, 7, 8, and 9, changing their numbers consecutively from 1 to 6, and claiming that the Goodenow patent differed from the device described in the claims so retained. Among the grounds stated in support of the difference so claimed was this:

"Again the 'swinging bail' is a novel feature, and not found in the cited case. It is of peculiar use, as it sustains the 'arm, 9,' both at its upper and lower position."

The claims so presented a second time were regarded by the examiner as unpatentable, and were again rejected. Further reference was made to Mearns, 191,702, June 5, 1877, "Grates Compound Movement." Reconsideration was asked and given, but the claims were once more rejected; additional reference being made to Brown, 108,754, November 1, 1870, "Hot Air Furnaces." Upon appeal to the board of examiners, the examiner was affirmed as to claims (newly numbered) 1, 2, 4, and 6, and reversed as to claims 3 and 5. Afterward Maag canceled all these claims except 3 and 5, and

asked that they be changed in numbers to 1 and.2, and at the same time added two new claims. The new claims were refused for formal reasons, and so need not be set out or further noticed. Thus all of Maag's claims were rejected and canceled save only his original claims 5 and 8, now 1 and 2 (shown in statement as before mentioned). It is plain that the examiner regarded Maag's device as wholly anticipated by the references made in the orders of rejection; and the only difference between him and the board of examiners related to the two claims allowed. It is to be observed that in each of these two claims, express reference is made to a "swinging bail"; and that the only device mentioned in the specification or displayed on the drawings as affording any means of supporting and operating the shaker arm and dumping portion of the grate is a "swinging bail." In the first claim these supporting and operating features are associated with a "swinging bail" by the words "means as a swinging bail to vary the inclination of one of said portions," that is, such dumping portion; while in the second claim these sustaining and operating features are associated with "a swinging bail mounted in said ash-pit arranged when swung in one position to keep said grate level, and when swung in the other direction to lower one of the portions of said grate into an inclined position."

Now, it is admitted that claim 2 is not infringed, but it is insisted that claim 1 is. The only difference that need be noticed between the language of the two claims in the respects just mentioned is that in the first the words are "means as a swinging bail," and in the second the words are "a swinging bail." The language of the first claim in regard to varying the inclination of one portion, and the language of the second claim· in that behalf may, we think, be treated as in effect identical; because only two positions, the horizontal and the inclined, are described in the specification as having any importance whatever.

Do the words "means as," found in claim 1 and not in claim 2, signify a distinction between the two claims respecting the element of the swinging bail? It is true that the employment of different words in separate claims indicates a purpose to secure distinct inventions; indeed, the rule is that "each claim of a patent covers a complete invention, and is, in substance, an independent patent." Celluloid Mfg. Co. v. Zylonite Brush & Comb Co. (C. C.) 27 Fed. 291, 294; United Nickel Co. v. California Electrical Works (C. C.) 25 Fed. 475, 479; Leeds & Catlin v. Victor Talking Mach. Co., 213 U. S. 301, 319, 29 Sup. Ct. 495, 53 L. Ed. .805.

But in the present case we are concerned not merely with a difference in forms of expression found in the two claims of the patent, but also and especially with what effect, if any, the rejection of seven out of nine of the original claims and the inventor's acquiescence therein had upon the two claims granted. If claim 1 had itself been changed so as definitely to limit its scope to the swinging bail, acquiescence therein on the part of the inventor would manifestly have estopped him from using any other device than the bail to support or operate the dumping portion of his grate, no matter whether anything in the prior art required such a limitation or not. See decisions

cited in Campbell v. Am. Shipbuilding Co. (C. C. A., Sixth Circuit) 179 Fed. 498, 502, 503; also Brown v. Stilwell & Bierce (C. C. A., Sixth Circuit) 57 Fed. 731, 741, 6 C. C. A. 528; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 40, 14 Sup. Ct. 28, 37 L. Ed. 989; Royer v. Coupe, 146 U. S. 524, 530, 13 Sup. Ct. 166, 36 L. Ed. 1073; Hubbell v. United States, 179 U. S. 77, 83, 21 Sup. Ct. 24, 45 L. Ed. 95.

Now it is hard to perceive any difference in principle between acceptance of a limitation made in the Patent Office through change of a single claim, and acceptance of a limitation imposed upon that claim through denial of other claims of the same application. Of course it would generally be more difficult definitely to work out an estoppel in the latter case than in the former; and it must be conceded that estoppel will not lie in either of the cases suggested, unless its elements are definitely traceable to the inventor through his acquiescence in adverse action taken in the Patent Office. Vrooman & Vrooman v. Penhollow (C. C. A., Sixth Circuit) 179 Fed. 296. In the present instance, however, unlimited scope was sought through the rejected claims to introduce devices for supporting and operating the dumping portion of the grate. But in their rejection, the swinging bail was brought into distinct prominence in this very particular.

It is certain that a broader construction should not be placed on the claim in suit than would be accorded to any of the claims disallowed and canceled. As stated by the present Mr. Justice Lurton in announcing the opinion of this court in Bundy Mfg. Co. v. Detroit Time-Register Co., 94 Fed. 524, 543, 36 C. C. A. 375, 394:

"The third and fourth claims should, as a consequence of the cancellation of claims 1 and 2, be so construed as not to include the broad claims of the rejected application."

Again in United States Repair Co. v. Assyrian Asphalt Co., 183 U. S. 591, 22 Sup. Ct. 87, 46 L. Ed. 342, patents were involved relating to the method of repairing asphalt pavements and apparatus for that purpose. The decision of the court below (100 Fed. 965, 41 C. C. A. 123) was affirmed upon a question which we think apposite here. Two claims were declared in the Patent Office to be the same in substance, and it was in effect required by that office that one or the other of the claims should be withdrawn; and the withdrawal having been made, the ordinary rule was applied, Mr. Justice McKenna adopting the language of the court below (page 601 of 183 U. S., page 91 of 22 Sup. Ct. [46 L. Ed. 342]):

"Having voluntarily abandoned the claim for a method limited to the use of 'a blast of heat,' the patentee or his assignee may not now insist that a broad claim, containing no suggestion of such intention, shall nevertheless be subjected by construction to the same restriction."

Turning, again, to the action taken in the Patent Office upon the present application, we think any comparative study of the references there made in connection with the rejected and granted claims will show that the only part of the combination in suit that was regarded by any of the officials of that department as novel, was

the swinging bail. A grate composed of two pieces was mentioned in every one of the claims as made. Connection between the parts and pivotal support to admit of horizontal rotation were common to all the claims, as also contrivances for sustaining and lowering the front portion of the grate. The Goodenow patent relating to grates for furnaces consisted of "two parts pivoted to each other, the forward pivoted portion adapted to drop downward, and held in its closed position by a dog secured to the front portion of the rim of the grate." The · declared object of the device was "to afford a ready means for cleaning the surface of· ashes and clinkers and to prevent clogging of the grate during the operation of shaking."

Again, the Mearns patent is a two-part grate, and it is said in the specification in allusion to what is there called a front crank:

"On one end of the front crank is a lever, E, and connected therewith is a slip-lever, F. The latter is used for shaking the grate and for bringing it down to a half-dumped position, but is too long for dumping the grate, and consequently has to be slipped off the lever, E, which is used alone for that purpose."

The Brown reference involves a single part grate, but is arranged for dumping and cleaning, and has an extended arm for supporting the grate in horizontal position, and allowing it when disengaged to drop to an inclined position.

But without entering further into the details of these patented devices, we think enough is disclosed to justify the belief of the officials of the Patent Office that the references were fairly suggestive of every part of the patent in suit, except the swinging bail. The marked feature of the bail is the facility it affords within its own structural limits for alternately holding the shaker arm with the tilting part of the grate in the two useful positions described, one the normal and the other the inclined.

Furthermore, the elimination of the word "means," by the rejection of original claims 2, 3, 4, 6, and 7, could not fail to attach distinct significance to the words "swinging bail" as used in the only claims allowed. Especially is this true of original claim 4, in which reference was made to the · two pivotally connected portions of the grate, and "means for raising and lowering one of said portions." Why should not that claim have been granted, if any other means than the swinging bail had been regarded as without the range of mechanical skill and the prior art? Why was it that in no instance was the word "means" suffered to remain in connection with the elevation or lowering of the shaker arm and tilting portion, except only when the word was definitely explained and restricted thus: "means as a swinging bail to vary the inclination of one of said portions"? The inventor was compelled to surrender everything else. Surely the object of this surrender cannot be misunderstood. As before pointed out, it was specially sought by the inventor to differentiate one of the references by insisting upon the novelty of the swinging bail. The action of the board would seem unerringly to be a response to that contention. If, then, the words "means as a swinging bail" do not denote a limitation to the bail itself, they certainly do to a device that would in and of itself through simple

manipulation perform the double function attributed to the swinging bail. It is true that this is yielding to the patent a very narrow construction; but to give it greater scope would clearly be to extend to it a scope beyond the limits of at least one of the claims denied.

Illustration is given of the unconscious violation of the rule in this regard by learned counsel of appellant. Their argument is carried to the extent of claiming that the bail arms might be made so long as not to "support the (shaker) arm in its inclined position." This is plainly inconsistent with their other and distinct claim repeated so often as a novel feature of the bail, viz, "permitting the front half of the grate to drop sufficiently to have the clinkers raked out and yet not low enough to drop the coal above it." Neither could a bail so extended escape the prior art, especially the Mearns patent·in the respect above pointed out; for, judging from Maag's specification and claims, Maag did not foresee any more than Mearns foresaw the quality of at once admitting of removal of the clinkers and preventing dropping of the coal. Nor is it easy to see why the necessity so to enlarge the bail in order to show infringement, does not in effect concede a material distinction between the two devices in issue both as to construction and operation.

We are thus constrained to believe that if we assume, as we shall for the purposes of the case, patentable quality in the invention in suit, the appellant must be restricted to the particular device described in the claims. It is only necessary then to consider for a moment the difference of manner in which the dumping portions and extended arms of the two devices in issue are raised and lowered and there held respectively. As before shown, the swinging bail alone is employed for these purposes under the patent in suit. In other words, the arm is held in and restored to horizontal position and also in its inclined position by the bail; the bail "retaining" the arm "from complete descent to the ground line." The dumping portion of appellee's device is held in horizontal position (and in that position only) by a hook cast in the upper surface of the shaker arm, which engages a segmental flange cast in the top surface of the entrance to the ash-pit. When the arm is moved beyond either end of this flange (unlike the arm of the patented device) it drops to the ground line. The only way to move or use it when .in that position or to restore it to a level plane is directly by hand. The differences then in structural support and also in operation of the shaker arms and tilting portions of the two grates are enough, we think (in spite of the apparent motives of one of its officers), to relieve appellee from the charge of infringement. Ross-Moyer Mfg. Co. v. Randall (C. C. A., Sixth Circuit) 104 Fed. 355, 359, 43 C. C. A. 578; Rich v. Baldwin, Tuthill & Bolton (C. C. A., Sixth Circuit) 133 Fed. 920, 923, 66 C. C. A. 464; Central Foundry Co. v. Coughlin (C. C. A., Fifth Circuit) 141 Fed. 91, 94, 72 C. C. A. 93; Hardison v. Brinkman (C. C. A., Ninth Circuit) 156 Fed. 962, 967, 87 C. C. A. 8; Cimiotti Unhairing Co. v. Am. Fur. Ref. Co., 198 U. S. 399, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100.

The decree below must be affirmed, with costs.