W. W. SLY MFG. CO. v. RUSSELL & CO.

(Circuit Court of Appeals, Sixth Circuit. July 12, 1911.)

No. 2,098.

1. PATENTS (§ 168*)—CONSTRUCTION—LIMITATION BY PROCEEDINGS IN PATENT OFFICE.

Where an applicant for a patent acquiesces in the rejection of the claims presented, and amends the same or substitutes others to meet the objections of the Patent Office, he must be deemed to have surrendered and disclaimed what he has thus conceded, and is bound by the limitation so imposed; and in such case it is immaterial whether the Patent Office was right or wrong in rejecting the original claims.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. § 168.*

Conclusiveness and effect of decisions of Patent Office in proceedings on applications, see note to Novelty Glass Mfg. Co. v. Brookfield, 95 C. C. A. 530.]

2. PATENTS (§ 87*)—ABANDONMENT—PRESUMPTIONS.

But abandonment of invention through amendment of claims in the Patent Office is not to be presumed. •

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 87.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—IRON CINDER CRUSHER.

The Sly patent, No. 514,097, for a crusher intended for the recovery of iron from cupola cinder, was not anticipated and discloses invention. It is not limited to the crushing function, but includes also the separating feature, which is the principal object to be accomplished and in which it has proved successful, and is entitled to a reasonable breadth of equivalents. As so construed, *held* infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Suit in equity by the W. W. Sly Manufacturing Company against Russell & Co. Decree for defendant, and complainant appeals. Reversed.

John B. Hull and Robert H. Parkinson, for appellant.

Howard G. Cook, for appellee.

Before KNAPPEN, Circuit Judge, and McCALL and SATER, District Judges.

KNAPPEN, Circuit Judge. This suit was brought by the complainant, who is the appellant, for the alleged infringement of United States patent No. 514,097, to Sly, dated February 6, 1894. Claim 1 of the patent, which is the only claim in controversy, reads as follows:

"1. In a rotary crusher, a cylinder $A$ chambered heads $C$ $C$ in said cylinder, hollow trunnions $C1$ $C1$ on said heads, supporting the cylinder in bearings $C2$ $C2$ of the supporting frame; the rolling troughed crusher $D$, loosely placed in said cylinder; and means for rotating the cylinder, combined and operating substantially as and for the purpose set forth."

The complainant contends that the device, as patented, includes, as a constituent element, a separator feature. The defendant insists that the patent is limited to a crushing device; that, as so limited, it is anticipated by the prior art. The Circuit Court took this view, and dismissed the bill. Infringement is also denied.

1. The contention that the patent is limited to the crushing feature is based largely upon what occurred in the Patent Office in connection with the application for and allowance of the claim. The specification states that the invention "relates to machines for crushing ore, cinders, etc., and consists in the new construction and combination substantially as hereinafter described and pointed out in the claims." In explanation of the drawings, after describing the cylinder with its frame and door in the side thereof, occurs the following:

"$C$ $C$ are chambered heads consisting of a castings having hollow trunnions $C1$, and are firmly riveted in the ends of the cylinder, and the cylinder is supported by these trunnions, in boxes $C2$, mounted on a suitable framework which supports the entire machine. The chambers in the heads are preferably made square. One of the heads has four radial partitions $C5$, which divides the chambers into four compartments, centrally communicating with one another, and with the hollow trunnion. This chamber is closed by an inner plate $C4$ fastened by rivets, and it has openings $C5$ leading

---
* For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

into the said compartments, over inclines C6. [Two of these inclines are so located in each of the four compartments of the chamber, that their inclined surfaces lead to the said openings C5. and are designed for conducting the pieces of iron that may get into the chambered head back into the cylinder. while the dirt and lighter particles float off with the water.] The opposite or right-hand head is not divided into compartments but is closed by a perforated lining plate enclosing the chamber. To the trunnion on this head is to be attached a hose or pipe for conveying water into the cylinder through the said perforations. This is the inlet head, and the other, the outlet head for the discharge of water and washing."

The letters referring to radial partitions obviously should be "C3" instead of "C5."

The bracketed clause was not in the original specifications. It was inserted later, as hereinafter stated.

After describing the construction and movement of the crushing device, as well as the mechanical means by which the cylinder is revolved, the specifications proceed:

"The operations of this machine are as follows:

"It is intended principally for crushing cinders from cupolas, and collecting the iron particles therefrom. The cinders are placed in the cylinder, and as the cylinder revolves the crusher rolls on the bottom and crushes the cinders under it. * * * Water is allowed to flow through the cylinder standing up about midway of the hollow trunnions. The direction of the inclines are in opposition to the revolutions of the cylinder, that is they are not intended to act as scoops for catching the broken cinders, but will admit the ingress of water and the dirt or lighter particles, and should any part of iron particles pass in, they, being of greater specific gravity, would fall into the lower compartment in the chamber head, and as the compartments come up on a horizontal line with the trunnions, the inclines and openings C5 in that compartment are in a position to discharge the iron back into the cylinder. The iron sliding on the inclines out of the openings."

The omitted portions represented above by asterisks relate to the position and function of the crusher, and are not material to the immediately present inquiry.

The original claims were two in number, as follows:

"1. In a rotary crusher the combination with cylinder A of a door and fastening consisting of a frame B, frame B hinged to said frame B plate B and rod d arranged substantially in the manner and for the purpose set forth.

"2. In a rotary crusher and separator the combination of a cylinder having an opening in the side closed by a door and hinged frame; chambered heads fixed in the ends of the cylinder, having hollow trunnions on the centers of the heads, supported in bearings on the main frame; the chamber in one of the heads divided into compartments by radial partitions; holes in the lining plate over incline in the said compartment; the roller trough crusher contained in the cylinder; and means for revolving the cylinder, constructed to operate substantially in the manner and for the purpose set forth."

The communication of the examiner in charge of the application stated:

"The inclines C6 * * * should be lettered and more clearly shown. The inlet and outlet orifices must be indicated by arrows."

After criticising the description in the specifications of the door frame and the door in the side of the cylinder (referred to in the first claim as originally drafted), the communication proceeded:

"The exact object to be accomplished must be clearly set forth. A model is required as a temporary exhibit. The head $C$ is not properly shown in Fig. 2, the drawing not being uniformly finished. Rod $d$ in claim 1 is evidently a mistake for $b$. So far as appears the 1st claim is essentially anticipated in 72,002, Drummond, Dec. 10, 1867, and 129,522, Bump & Ritchie, July 16, 1872, Ball and Drum. The 2nd claim is for an aggregation of devices in view of the same patents and 244,316, Sample, July 12, 1881; 395,140, Hill, Dec. 25, 1888—Ball & Drum; 267,529, Holcomb & Heine, Nov. 14, 1882, and 302,480, Gorton, July 22, 1884—Bran Dusters, Beaters. These patents show the several features mentioned to be old in the same functions and relations, but rejection on the merits is deferred."

The applicant thereupon amended the specifications by inserting therein the description of the inclines as contained in the clause in brackets in the earlier portion of this opinion; also by furnishing a substituted drawing showing a cross-section of the drawing of the longitudinal section of the machine, converting original claim 2 into claim 1 of the patent as issued, and adding a detailed drawing of the inside of the left-hand, or outlet chambered head. The application, as so amended, was immediately allowed, without further correspondence.

[1, 2] The rule is well settled that where an applicant for a patent acquiesces in the rejection of the claims presented, and amends the same or substitutes others to meet the objections of the Patent Office, he must be deemed to have surrendered and disclaimed what he thus conceded, and is bound by the limitation so imposed; and that in such case it is immaterial whether the Patent Office was right or wrong in rejecting the original claims. Shepard v. Carrigan, 116 U. S. 593, 597, 6 Sup. Ct. 493, 29 L. Ed. 723; Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, 33 L. Ed. 382; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 38 L. Ed. 500. This court has more than once enforced this rule. See American Stove Co. v. Cleveland Foundry Co., 158 Fed. 978, 983, 86 C. C. A. 182; Campbell v. American Shipbuilding Co., 179 Fed. 498, 103 C. C. A. 122; Twentieth Century Heating Co. v. Taplin, Rice-Clerkin Co., 181 Fed. 96, 104 C. C. A. 156. The rule stated, however, rests upon the proposition that an applicant by submitting to the demands of the Patent Office, and thereby surrendering a claim or limiting its breadth, is deemed to have abandoned the feature so surrendered and to have dedicated it to the public, and thereby become estopped from asserting that the claim so allowed has the breadth of the rejected claim. It is the general rule that abandonment of an invention is not to be presumed, but must be clearly proven (Ide v. Trorlicht, etc., Co. [8th Circuit] 115 Fed. 137, 53 C. C. A. 341); and no reason is apparent why this rule does not apply to an alleged abandonment through amendment of claims in the Patent Office.

[3] The changes by which it is contended that applicant limited the claim in question to the crusher feature merely are, generally speaking, eliminating therefrom the words "and separator" following the word "crusher" in the reference to the device, and in omitting, in the redrafted claim, the words descriptive of the detailed construction of one of the chambered heads—"The chamber in one of the heads divided into compartments by radial partitions; holes in the lining

plate over incline in the said compartment." In our opinion the applicant did not thereby abandon the separating feature and limit his patent to the crushing element. The mere use of the word "crusher" in the amended claim is by no means conclusive of an intent to limit the protection of the patent to the crushing feature. The introductory phrase is not an element of the combination, and does not necessarily limit the claim. Ex parte Casler, 90 Off. Gaz. Pat. Off. 446. The object of the crushing was to accomplish a separation. It would have been in our judgment entirely proper to have styled the device either a crusher or a separator. Neither definition would have run counter to the custom prevailing in such cases. For example, the machine which hulls wheat and separates the hulls from the chaff is usually called a separator. The machine which performs the same function in the case of clover seed is usually called a huller. Both accomplish the two operations of hulling and segregating the hull from the kernel. That neither the examiner nor the applicant understood that the latter was abandoning the separating feature seems clear from these considerations: The examiner's communication required a more clear showing of the inclines in the outlet head, which the specifications show were designed only for the purpose of separating the cinders from the ore in conducting the iron back into the cylinder, "while the dirt and lighter particles float off with the water;" and in connection with the redrafted claims, not only was an amendment of the specifications allowed, containing a detailed description of the inclines in the outlet head, but an additional drawing was provided showing such detailed construction. Furthermore, in the redrafted claims, in connection with the elements accomplishing the crushing feature, there was expressly included the element of the chambered heads, which had no relation to a mere crushing machine. Still, further, the record shows that the idea of the inventor by the machine in question has always been to accomplish the actual segregation of the cinder from the ore and the removal of the former from the crushing cylinder, the crushing process being merely a means to an ultimate end. While the specifications state that the invention relates to machines for "crushing ore, cinders, etc.," the further statement is made that the machine "is intended principally for crushing cinders from cupolas and collecting the iron particles therefrom," and the record shows that such has been its principal, although not its sole, use. It has, however, always been used both as a crusher and separator. A construction resulting in the abandonment by the applicant of the very feature for which the invention was in large part designed should not be adopted unless such abandonment is clearly shown.

In view of these considerations, and taking into account the fact that rejection was not actually declared by the examiner, we think the applicant was not by that communication put to an election between abandoning the separating element or having his claim disallowed, and that he did not exercise such election. In reaching this conclusion we assume that the statement in the examiner's letter— "The exact object to be accomplished must be clearly set forth"—

did not relate to the chambered heads. We also assume that the applicant understood that the aggregation referred to by the examiner related to the inclusion in one claim of the elements thereof relating to the crushing feature and the separating feature respectively. It may well have been that the applicant recognized a degree of plausibility in the suggestion that the inclusion in the claim of the detailed construction of the cylinder heads constituting the separator feature with the detailed description of the crushing element constituted aggregation, and was willing to so restate his claim as to avoid that criticism. But in doing so he did not limit the scope of his claim. On the other hand, he broadened it. Instead of a claim as originally drafted, limited as respects the separating feature to chambered heads having the detailed construction stated therein, he presented and procured the allowance of a claim including as one of its elements the chambered heads of the general description and having the functions and method of operation described in the specifications.

2. We do not understand the defendant to contend that the claim in question, as redrafted, covers merely an aggregation of elements. To prevent misapprehension, however, we state that in our opinion it is not subject to such criticism. When the complete machine of the patent is used the crushing and separating elements do, in our opinion, co-operate to produce a new, final and unitary result, to wit, the complete separation of the cinder from the iron and the ejection of the former from the mill and the leaving of the latter therein. This constitutes invention. National Cash Register Co. v. American Cash Register Co., 53 Fed. 367, 371, 3 C. C. A. 559; Walker on Patents (4th Ed.) § 33.

3. Were the claim in suit to be construed as covering merely a crushing device, we should agree with the Circuit Court that it was anticipated by the patent to Hill, No. 395,140. But, construed as we have construed it, as covering both the crushing and separating elements, we think it is not anticipated by any of the earlier patents cited. These citations are Chubb, No. 52,532; Scoville, No. 59,463; Bolthoff, No. 166,743; Rutherford, No. 224,357; Gates, No. 380,432; Hill, No. 395,140; Coward, No. 413,388; Sample, No. 244,316. Chambered heads having the functions of those in the patent in question are found in none of these patents. Neither of them is as close a reference as the Hill machine, to which we are about to refer.

4. Before and at the time the patent in suit was applied for, there was upon the market and in use a machine manufactured by the patentee Hill before referred to, for the recovery of metal from "brass foundry cinders, skimmings and ashes." This machine consisted, generally speaking, of a revolving cylinder, the material being crushed by a large cylindrical crusher having circumferential grooves or pockets. The finely crushed particles of the refuse material were removed from the cylinder by either a blast of air or by water entering through an inlet trunnion and discharging through an outlet trunnion. It entirely lacked the chambered heads of the patent in suit or anything approximating them. There were no plates, inclines, or partitions in the heads for the turning back of the heavier particles into the cylin-

der or for preventing the material from returning into the inlet. In fact, for the purpose of operating, the cylinder was filled only to within about two inches of the lower surface of the outlet; while the machine of the patent in suit, by reason of the construction of the chambered heads, may be filled above the lower surface of the outlet. In the catalogue describing Hill's crusher, the manufacturer, in discussing the relative desirability of air blast and water, says that:

"Most decidedly the dry method is the best and nicest. * * * An exhaust fan will draw away quite coarse material, at the same time losing no metal, if the suction pipe is properly adjusted at the outlet of the case. The same material, if wet, would need to be ground to powder in order to float out with the water."

It is obvious that the Hill machine does not anticipate the Sly patent.

5. The question of infringement remains. The machine used by the defendant (not manufactured by it) clearly infringes the complainant's patent unless it is differentiated therefrom by the form and function of the crushing agent. It is a rotary crusher. It has the cylinder, the chambered heads having the functions and operating substantially as those of complainant's patent, the hollow trunnions of the heads supported as in complainant's device, a crushing agent loosely placed in the cylinder, and means for rotating the same. The specification of complainant's patent refers to the crushing agent as—

"a rolling crusher, consisting of disks joined by wings rotating from an axis, and forming angular troughs. This crusher is placed loosely in the cylinder, and rolls in the lower side thereof as the cylinder is revolved."

And in the description of the operation of the machine it is said that:

"As the cylinder revolves the crusher rolls on the bottom and crushes the cinders under it, at the same time a large portion of cinders are carried over in the troughs in the upper side of the crusher, and are dumped in front of it. They also serve to give additional weight to the crusher."

In the claim under consideration this crushing agent is spoken of as "the rolling troughed crusher D, loosely placed in said cylinder." The defendant's crushing agent, instead of being troughed by means of wings radiating from the axis, is hexagonal and solid, and of much smaller diameter than complainant's troughed crusher, although, being solid, it is apparently as heavy. The important question is whether or not defendant's crushing agent is the substantial equivalent of the crushing agent of complainant's patent. The answer to this question depends upon the range of equivalents to be accorded the patent, with respect to those elements; and this question of breadth of equivalents again depends upon the extent of the advance which the inventor has made in the art.

As stated by Judge Severens in Penfield v. Chambers, 92 Fed. at page 638, 34 C. C. A. at page 587:

"The rule applicable to the determination of equivalency depends upon the importance and the breadth of the original invention, and does not depend upon the question whether it was the first in the field relating to that subject, but upon the degree of advancement which the invention has made in newness of discovery and utility; for there may be as much merit in bringing on a large illumination from a feeble start, as in the conception of the first beclouded idea which may have originated the course of study and discovery

along that line. The rule is not a hard and fast one, but measures equivalents by looking to see what has been accomplished before, and finding whether the combination, read broadly, had been anticipated, or whether, having reference to what had already been shown, the claim must be limited to the precise construction in order to save it as being new; for the constant rule is to give to the inventor the benefit of all that he has invented. If he has improved only a little, he has only a correspondingly narrow standing ground. If he has improved much and widely, the area of the field in which he is to be protected is enlarged to the limits of what his invention has made his own."

In Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. at page 540, 36 C. C. A. at page 391, Judge (now Mr. Justice) Lurton said:

"To be entitled to the benefit of the doctrine of equivalents, it is not essential that the patent shall be for a pioneer invention in the broad sense of that term. If his invention is one which has marked a decided step in the art, and has proven of value to the public, he will be entitled to the benefit of the rule of equivalents, though not in so liberal a degree as if his invention was of a primary character."

In McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 41 C. C. A. 627, this court, likewise speaking through Judge Lurton, held that the patentee, although not a pioneer inventor, but an improver only, is entitled to a reasonable range of equivalents, measured by the advance he has made over older machines, and is not limited to the specific form claimed and described unless he has expressly so limited himself, or unless such limitation is necessary in order to save his patent from anticipation. See, also, Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Metallic Extraction Co. v. Brown (8th Circuit) 104 Fed. 345, 43 C. C. A. 568; Vrooman v. Penhollow (6th Circuit) 179 Fed. 296, 307, 102 C. C. A. 495. In the latter case Judge Severens thus stated the rule:

"We do not doubt that where the thing described in a claim has been declared by the inventor to be the only one, or has treated it as the only one appropriate to represent his invention, or the character of the associated elements is such as necessarily to require that particular form, in all such cases the patentee will be bound by his description. But where there are no such considerations, and there is simply and only a description of one form of a thing which would perform the same office in other forms, the court will apply the general rule above stated and accord him his monopoly in all equivalent forms. In such a case the general rule prevails, and there is no ground for treating the case as exceptional."

Sly's invention marks in our opinion a long step in the art to which it applies, and is entitled to a reasonable breadth of equivalents. No invention in the prior art was adapted with any substantial effectiveness to the treatment of iron cupola cinder.

The so-called "stave-mill," which was specially designed for cleaning castings, and which, before the invention of the Sly machine, was used by foundry men, in connection with their business, for the treatment of iron cinder, was slow in operation and lost from 18 to 35 per cent. of the iron. The Sly machine is rapid in operation, recovers nearly all the iron, and appears not only to have been successfully used by foundry men in connection with their own business, but to have been bought and used with commercial success by others

than foundry men for the purpose of the recovery of metal from refuse of brass foundries and old iron cinder heaps bought for the purpose.

The chambered heads in the use to which they are put in Sly's device are new and effective. The Hill machine, which has not the chambered heads, would, as shown by tests made for the purposes of this suit, separate iron cinder; and Hill was ready to testify, as the result of those tests, that in his opinion his machines are well adapted to recover iron from foundry cinder in sufficient quantities to make their use for the purpose commercially profitable. But the cinder had to be broken up into comparatively small pieces, the mill worked slowly, and the record, taken together, leaves it at least doubtful whether iron cinder could not be worked as profitably by hand as by the Hill machine. Hill himself, in answer to the question whether he had sold his mill of the type shown in his patent for the purpose of recovering iron shot and particles from iron foundry cinder, answered:

"Yes. Concern in Wilmington, Del., bought a little mill to experiment on material they were throwing away, that had some metal in; that is, scrap that they got from their furnaces and were throwing away. This concern bought a mill from me on approval, but found that it was not practical for their purpose, and returned it. This iron was oxidized scale. I went there and attempted to make a success, but found that he didn't recover enough out of the material he had to make it pay. Another party attempted to make fettling for puddling furnaces with one of my mills, but could not make it answer the purpose. My machines are especially designed for *recovering brass particles from brass foundry cinders, skimmings and ashes.*" (Italics are ours).

The stipulation as to his testimony in connection with the tests above referred to included the fact that in 1892 or 1893 he made a test on iron foundry cupola cinder for a prospective customer, but that the party for whom the test was made did not purchase the mill. We understand the Hill mill has never been put into actual business use as an iron recoverer.

The Sly device has proved highly successful and commercially profitable. While sales of the machine were at first slow, they amounted to $40,000 for the year immediately prior to the coming upon the market of the machine of which defendant's is a sample. We are convinced that it is the first successful and satisfactory recoverer of iron from cupola cinder, for which it was specially designed, and for which purpose, as we understand the record, the alleged infringing machine is used by defendant. Moreover, while the Hill machine was specially designed as a brass recoverer, and seems to have been commercially successful therein (having been not only used by brass foundry men, but sold to several parties for the purpose of recovering brass from brass cinder, as a separate business), complainant's machine seems to have proved more effective than the Hill machine even as a brass recoverer, it appearing that a refuse dump resulting from the operation of a Hill mill upon brass cinder was profitably worked by a Sly mill.

In view of this situation, we do not think the patentee should be

held limited to the precise form of his crushing agent as described in the patent, in the absence of words of express limitation thereto. We do not construe the language of the specifications and claim as expressly so limiting it.

It is urged, however, that defendant's hexagonal crusher does not perform the functions of the rolling troughed crusher of the patent, and so cannot be considered the equivalent thereof. It is, of course, true that for one thing to be the equivalent of another it must perform the function of that other, and the function must be performed in substantially the same way by the alleged equivalent as by the thing of which it is alleged to be the equivalent. But it is not necessary that this function be performed in identically the same way, or to the same extent. As applied to this case, the defendant's hexagonal crusher, theoretically at least, does not perform, to the same extent as Sly's troughed crusher, the function of carrying the crushed material to the upper side of the crusher and dumping the same before it. It appears, however, that in the practical operation of the Sly crusher very little material is carried up and dumped in front of the crusher through the action of the troughs therein—as only the finer material would be so carried up—and it is apparent that the faces of the defendant's hexagonal crusher (which in defendant's machine are each about 4½ inches wide) do—and especially when brought into relation with the sides of the cylinder—perform, to an appreciable extent, the same function of carrying forward the crushed material and again dumping it in front of the revolving crusher, which could not be the case with a cylindrical crushing agent. Both the troughed crusher of the patent and defendant's hexagonal crusher are loosely placed in the cylinder, and both turn or roll therein in substantially the same way. Both have a striking action upon the material.

In view of the advance made by Sly in the invention of the combination in question, the fact that the form of crusher adopted by him was not necessary to the obtaining of the patent, but, on the contrary, was old in the art; that the crushing was but one element in and one step toward the result to be accomplished; and in view of the extent to which, in practical operation, the defendant's crusher performs the functions of that element of the patent, we are constrained to hold the complainant's patent infringed by the defendant's machine.

The decree of the Circuit Court is accordingly reversed, with directions to enter the usual decree for an accounting. As the patent has expired, there is no occasion for injunction.