## VENEER MACHINERY CO. v. GRAND RAPIDS CHAIR CO.

(Circuit Court of Appeals, Sixth Circuit.   November 2, 1915.)

No. 2567.

1. PATENTS ⬥328—VALIDITY AND INFRINGEMENT—MACHINE FOR EDGE-UNITING VENEERS.

The Boenning patent, No. 709,864, for a machine for edge-uniting veneers, *held* valid, and claims 4, 5, 10, 12, and 15 infringed.

2. PATENTS ⬥165—CONSTRUCTION—CLAIMS TO BE CONSTRUED INDEPENDENTLY.

Each claim of a patent is supposed to embody a complete invention, and is in effect an independent patent for the device it covers, and a limitation contained in one claim cannot be read into another.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. ⬥165.]

3. PATENTS ⬥236—INFRINGEMENT—SUBSTITUTION OF EQUIVALENT PARTS.

A change in the form of some of the mechanism of a patented machine does not avoid infringement, where the principle of operation is substantially the same, and the same result is produced.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 372, 373; Dec. Dig. ⬥236.]

4. PATENTS ⬥245—SCOPE OF INVENTION—RIGHT TO EQUIVALENTS.

Although a patent for a combination in a machine of elements which were old in other and distinct arts, more or less remote, cannot be regarded as one for a primary invention, yet, where the patentee made a material advance in the particular art, the claims are entitled to a range of equivalents commensurate with his invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 386; Dec. Dig. ⬥245.

Patentability of combinations of old elements as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

5. PATENTS ⬥168—CONSTRUCTION—ESTOPPEL BY CANCELLATION OF CLAIMS.

The voluntary cancellation of a claim in an application for a patent does not create an estoppel, affecting the construction or scope of other claims as allowed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. ⬥168.]

Appeal from the District Court of the United States for the Southern Division of the Western District of Michigan; C. W. Sessions, Judge.

Suit in equity by the Veneer Machinery Company against the Grand Rapids Chair Company. Decree for defendant, and complainant appeals. Reversed.

Chappell & Earl and Fred L. Chappell, all of Kalamazoo, Mich., for appellant.

Samuel W. Banning, of Chicago, Ill. (Thomas A. Banning, of Chicago, Ill., of counsel), for appellee.

Argued before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge. This is an appeal from a decree dismissing the petition of the Veneer Machinery Company, which we

shall call plaintiff. The petition is of the ordinary form used in patent infringement cases; and the answer of the Grand Rapids Chair Company (herein called defendant) is of the usual form, denying validity and infringement. The petition is in terms based upon two patents, though the issue tried and the evidence offered concern only one of them. This patent was applied for by the inventor, W. M. Boenning, August 1, 1901, and was issued to him September 30, 1902, and numbered 709,864. Admittedly title to the patent is in the plaintiff, having been assigned to it by Boenning in March, 1907. The alleged infringing device is claimed to have been constructed according to a patent issued to John Black, December 5, 1911, numbered 1,010,846. It is stipulated that after plaintiff acquired title to the Boenning patent, and before commencement of the suit, defendant made use of a machine which is identified in the deposition of plaintiff's expert; but, while the expert speaks of the machine as one manufactured under the Black patent, he states that a number of changes had been made in the machine "as built." References to the patent were, however, regarded by him as useful in connection with certain drawings made and produced by him.

Both of these patents, as also the machines made and used under them, relate to and involve apparatus for edge-uniting veneers. Both patents describe and both types of machines embrace mechanical means for forcing trued edges of veneer strips hard together, and for preserving this relation by simultaneously applying adhesive tape to the upper surfaces of the strips, so as to cover and secure the union of their abutting edges.

[1] The question is whether plaintiff's patent is infringed by the defendant's machine. We state the question in this way for the reason that, in spite of defendant's answer (if we lay aside claim 14 of the patent), both the evidence and the argument result alike in showing and admitting patentable invention in the Boenning machine, though the breadth of the invention and the consequent range of equivalents are in controversy and will be considered later. Both patents, as well as the machines in issue, involve many combined devices to attain a common result. Sixteen drawings are employed in Boenning's and six in Black's letters patent to illustrate the various parts of the machine which each describes in his specification; additional drawings and also models are produced to explain and display the machines that are in actual use; and yet the ultimate issues are reduced by the evidence to a comparatively small number of controverted parts. It is therefore not necessary to a right understanding of the case either to reproduce the drawings or to call attention to the uncontested details set out in the record.

1. *Patent in Suit.* The controverted portions of the machine covered by this patent may be said to comprise a table, about 4 feet in length, with two endless-chain conveyers commencing near its front end and centrally located, one immediately above and in' line with the other, which are operated lengthwise of the table and thence through a drying box for an entire distance of something less than 30 feet. These chains engage and pass over sprocket wheels, one set of which

is placed near the forward end of the table and the other set at the end of the drying box. The upper surface of the lower conveyer, in plane with the upper surface of the table, is so shaped and supported as to form a solid bed; the lower surface of the upper conveyer is yieldingly held in contact with the upper surface of the other; and the two form a combined conveyer and press for the contacting edges and adjacent surfaces of the strips of veneer passing through them. These relations of the conveyers are maintained by two lines of rollers, one disposed beneath the portion of the lower conveyer which moves in the plane of the table, and the other above the portion of the upper conveyer and so as to exert pressure upon it while its lower surface is in contact with the upper surface of the other conveyer. The axes of the lower line of these rollers are fixed; but the axes of the upper line have vertical movement in slots and are held down against the other conveyer by springs adjustable through mechanism operated by hand. Further, there are two sets of three rollers each, one set being on each side of the upper part of the lower conveyer and about mid-way of the length of the table. The upper surface of these rollers lies in the plane of the upper surface of the lower conveyer. The three rollers to the left of the conveyer have their axes at right angles to the plane of movement of the conveyer, while the three rollers on the opposite side are corrugated and have their axes inclined to this plane. Immediately over these two sets of rollers, two other like sets are similarly disposed; that is, having their axes parallel with those immediately below. The object of these rollers is to force the edges of the veneer blanks firmly together as they pass through the conveyers and the adhesive tape is applied. This degree of edge contact is brought about by the rigidity which is imparted to the veneers by the uniform pressure to which they are subjected when passing through the moving conveyers and rollers and by their consequent susceptibility to the influence of the lateral rollers; that is, by the tendency of the two sets located on the left side of the conveyers to hold each veneer strip passing between them in the plane of movement of the conveyers, while the tendency of the opposite sets is to crowd each veneer strip passing between them against the other veneer strip by reason of the oblique relation of such opposite rollers to the plane of movement of the conveyers.

The taping process is this: From a tape reel mounted above the forward portion of the upper conveyer the tape is carried directly downward and over a roller which contacts with another roller rotating in a glue reservoir. The tape thus having the glue distributed over its under surface is continued in the same course until it is engaged by the conveyers, with its upper surface contacting with the upper conveyer and its glue surface with the portions of the upper faces of the veneers adjacent to and also embracing their abutting edges during the passage of the veneers through the machine.

The lower conveyer and the lower sets of lateral rollers before described are power-driven and are operated at the same speed; but the upper conveyer, as also the upper lateral rollers, are operated as idlers through contact with the veneers passing between them and their

corresponding parts below. The veneers are fed into the machine by an operator located in front of the table. To assist the operator the patent provides for an adjustable guide, though practically a thin blade is used in its stead. In using the former the trued edges of two veneers are brought into contact, while the outer edge of one of them is placed against the guide, and they are held together in that position and pushed forward by the operator until their ends are gripped by the conveyers. When the blade is used, it is fastened to the surface and lengthwise of the table opposite to the center line of the conveyers; and the trued edges of the veneers are held on opposite sides of the blade and pushed forward by the operator until they are gripped by the conveyers. When the veneers are manipulated in either of these ways, the method of edge-veneering is performed by the machine.[1]

Of the 22 claims of the Boenning patent, 6 are in suit—4, 5, 10, 12, 14, and 15. Claim 4 reads thus:

"In a device for edge-uniting two blanks of veneer or similar material, means for carrying said blanks in one direction, mechanism tending to force one of said blanks at an angle to the line of travel of said means and a distributer for placing a strip of adhesive material above the joint between said · blanks." [2]

---

[1] The patent mentions two ways of applying glue to the trued edges of the veneers, one being to apply it before the veneers enter the machine, and the other after they have passed through it. Since neither enters into the mechanism of the structures specified in the claims in suit, we cannot think it necessary to make further reference to them.

[2] The remaining claims in suit follow, except that the words with which each claim is commenced are not repeated: "In a device for edge-uniting two blanks of veneer or similar material."

Claim 5: " * * * A conveyer adapted to grip said blanks adjacent to their abutting edges and to carry the same through said device, means tending to force one of said blanks toward the other or at an angle to the line of travel of the conveyer, and mechanism acting in conjunction with said conveyer for placing a strip of adhesive material on said blanks over their abutting edges."

Claim 10: " * * * A table on which said blanks are placed, means for gripping said blanks simultaneously and imparting movement thereto, mechanism tending to force one of said blanks toward the other or out of the line of movement given by said means, a supply of adhesive material and a distributer acting in conjunction with said means for placing said adhesive material on said blanks above the joint between them, substantially as described."

Claim 12: " * * * A conveyer comprising an endless bed, and means for holding the blanks on said bed, a table on which said blanks are placed, said table being provided with an opening through which said bed moves, rollers arranged back of said table at one side of said bed with which said blanks in the movement given to them by said bed are adapted to contact, said rollers being arranged so as to force said blank toward other blanks, means operating in conjunction with said conveyer for placing a strip of adhesive material on the succeeding blanks over their abutting edges after said adhesive material has been placed on said first-mentioned blanks above their abutting edges, and means for moving said conveyer, substantially as described."

Claim 14: " * * * A conveyer for said blanks, upper and lower rollers standing at right angles to the line of travel of said conveyer between which one of said blanks is adapted to pass, means tending to yieldingly hold the upper rollers in contact with said blank, upper and lower rollers standing at acute angles to the line of travel of said conveyer between which the other of said blanks is adapted to pass, means yieldingly holding the upper of

2. *Alleged Infringing Device.* It is stated by the expert for defendant, and as we have seen by the expert for plaintiff, that the machine used by defendant differs in some respects from the machine described in the Black patent. We need not, therefore, attempt to show more of the details of that patent than are involved in some of the differences between it and defendant's machine. This may be done when considering features of correspondence between the machine and the Boenning patent. In the defendant's machine two endless conveyer chains are mounted with their upper surfaces in the plane of a table. They incline toward each other and are separated by a wedge-shaped strip, having one of its triangular surfaces in the plane, with the head of the wedge at the front and the thin edge disposed vertically at the rear, of the table. These features correspond with the Black patent, except that it provides for conveyer belts instead of conveyer chains. Sprocket wheels are maintained underneath and near each end of the table, over which the conveyer chains run. The bottom portions of the chains hang down and run under a strut, not over an idler pulley such as the Black patent calls for, and the upper portions of the chains are supported upon plates (instead of rollers as the Black and Boenning patents specify), which form beds for the portions of the chains moving in the plane of the table. Three rollers inclosed in boxes are mounted over each conveyer chain. The bottom of each box forms a shoe through which the rollers slightly project. These boxes with their shoes and rollers are controlled by adjustable spring pressure and so the shoes and rollers are made to press upon the veneers. An intermediate or third shoe is maintained over the wedge-shaped strip, lying between the conveyer chains, and is also controlled by adjustable spring tension and so exerts pressure upon the edges of the veneer strips. The three shoes project some inches in front of the compression roller boxes with their ends curved upward. The intermediate shoe extends rearwardly to a point where the taping process begins, while the other shoes, one on each side of the tape-adhering rollers, extend still farther toward the rear of the table.

A tape-adhering roller, adjustable through spring tension, is mounted over the wedge-shaped strip directly in rear of the intermediate shoe, and contacts with a roller vertically mounted in such strip. A tape reel, mounted above the mechanism thus far described, carries a prepared tape which requires moistening to make it adhesive. In its passage from the reel, the tape is carried over moistening rollers and delivered at the end of a tape guide in front of the adhering roller. The tape is then engaged by this roller and the veneers below, and so is attached to the strips.

said last-mentioned rollers in contact with said last-mentioned blank and mechanism for driving said conveyer and the lower of said rollers at the same speed."

Claim 15: "* * * A conveyer moving longitudinally of the abutting edges of said blanks, means tending to force said blanks together and a distributer acting in conjunction with said conveyer for placing a strip of adhesive material above the abutting edges of said blanks."

The power-driven portions of the mechanism described are the conveyer chains. The compression rollers, mounted in boxes as stated and the tape-adhering rollers are operated as idlers through contact with the veneers passing between such rollers and the conveyer chains. The machine is fed from the front by an operator, who places the trued edges of veneers upon either side of a channeled guide which is fastened to the upper surface of the forward portion of the wedge-shaped strip, and moves them forward until they are engaged by the conveyer chains and the front compression rollers; and the edge-uniting process is then effected by the machine.

3. *Infringement.* Now, if we have fairly described the machine called for and used under the patent in suit, and also the machine used by the defendant, we think any careful consideration of the descriptions will reveal mechanical equivalence in the edge-uniting parts of the two machines. These parts may be more conveniently compared by first considering the taping features of the machines. These features are obviously similar, except only as to the adhesive qualities of the materials used upon the tapes respectively and the consequent unimportant differences in devices used for applying the tape to the veneers. The Boenning patent calls for the application of glue to the tape, which (when used) requires at least partial drying in the machine; while the defendant uses a tape bearing an adhesive material which must be moistened before it is applied; and it is worthy of notice that the Black patent provides for a tape with an adhesive material which has to be moistened before applying it, and then heated in pressing it upon the veneers. Defendant thus avoids the use of a heating device, such as the drying box of the Boenning patent or the heated tape-adhering roller called for in the Black patent; but the tape used by defendant is an old and well-known commercial article, and so cannot be and is not claimed to be a differentiating element of any consequence. It follows that the drying box and consequent length of conveyers called for by the Boenning patent cannot be determinative of the present question of infringement; indeed, while the claims in suit call for conveyers, they do not specify their lengths, nor do they even mention the drying box or anything like it. In saying this, we appreciate the fact that the Boenning specification describes a drying box and the method of heating it, calling it "housing," and also that portions of the drying box and of the conveyers are shown on one of the drawings; but it is manifest that the drying box and its additional length of conveyers are not essential parts of the edge-uniting mechanism specified in the claims in suit, since an admitted equivalent is secured through the use of a prepared and effective tape (not requiring the application of heat) which is readily obtainable in the market.[3]

[3] Prof. Cooley, plaintiff's expert, after stating the length of the front part of the machine, the table, in which the veneers are united, testified as follows upon the subject, without contradiction: "The rest of it is dry kiln or housing. The adhesive material used was ordinary glue transferred from a melting pot to a strip of loosely woven muslin, and about 1½ minutes was required from the time the veneer strips entered the machine to their delivery at the rear end. Obviously if a different adhesive material were used, the length of the drying apparatus could be reduced, and indeed with certain

[2] The plaintiff's rights in this case are to be ultimately tested by the claims in suit. The rule is that each claim embodies a complete invention and in effect is an independent patent for the device it covers. Leeds & Catlin v. Victor Talking Mach. Co., 213 U. S. 301, 319, 29 Sup. Ct. 503, 53 L. Ed. 816; Bresnahan v. Tripp Co., 102 Fed. 899, 900, 43 C. C. A. 48 (C. C. A. 1st Cir.); XXth Century Heating & V. Co. v. Taplin Rice-Clerkin Co., 181 Fed. 96, 100, 104 C. C. A. 156 (C. C. A. 6th Cir.), and citations; Pope Mfg. Co. v. Gormully & Jeffrey Mfg. Co. (C. C.) 34 Fed. 893, 894. It is evident, moreover, that the claims in suit are broader than they would have been if the element of "housing" had been included in them, as it was in some of the claims not in suit, especially if "means for heating said housing" had also been included as claim 13 specifies; and to construe into any of the contested claims a limitation they do not contain would be unwarrantably to change the contract entered into through the issue and acceptance of the letters-patent. National Tube Co. v. Mark, 216 Fed. 507, 521, 133 C. C. A. 13 (C. C. A. 6th Cir.), and C. C. A. decisions there cited.

The question of infringement may thus be confined, and we think rightfully, to the parts of the two machines in issue which receive the veneer strips, force their trued edges firmly together, and preserve this edge relation by the application of adhesive tape. The principal contention made against the charge of infringement is that defendant's machine has no "means for carrying said blanks (the veneer strips) in one direction" within the meaning of claim 4 of the patent in suit, nor any instrumentality amounting to a mechanical equivalent for so carrying the blanks; and we understand this to be the basis of the decision below. The theory is that an element of the patent in suit is thus omitted, without substitution. It must be conceded that a claim for a combination is not infringed if any one of the elements is omitted without substitution of an equivalent (Cimiotti Unhairing Co. v. Am. Fur. Ref. Co., 198 U. S. 399, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100; Union Paper Bag Co. v. Advance Bag Co., 194 Fed. 126, 138, 114 C. C. A. 204 [C. C. A. 6th Cir.], and citations); but the contention that an element has been omitted here proceeds upon the theory that since defendant's conveyer chains travel in converging lines, while the chains (constituting a combined conveyer) of the patent in suit travel in a direct line, the veneer strips entering the respective machines are accordingly carried along different lines of movement; that is, the former are carried in converging directions, while the latter are carried "in one direction." This seems to be losing sight of the facts and so giving a strained and apparently undue significance to the words "in one direction." Admittedly, in both machines the trued edges of the veneers, throughout their lengths, are and of necessity must be

adhesive materials it could be done away with entirely, so that the machine would then be confined to the part which receives the veneer strips, forces their edges together, and applies the strip of adhesive tape. It is this part of the machine of the Boenning patent with which the claims in suit have to do, and it is therefore unnecessary to enter into any detailed description of that part of the machine embraced within the so-called housing."

carried in contact and *in one direction* during the process at least of effectively applying the tape; and the weight of the evidence is that the lines along which the veneer strips travel from their start to the portions of the conveyers where their trued edges entire are brought hard together and so secured by the tape, are substantially the same in both machines. We have seen that the strips of veneer fed into the patented device are moved in parallel lines either with their trued edges together or separated by a thin blade until their forward ends are gripped by the combined conveyer, and that the veneers fed into the defendant's machine are moved in parallel lines along each side of a channeled guide until they are engaged by the conveyer chains and the front compression rollers. It is true that during the feeding processes mentioned, the separation of the veneer strips is somewhat greater on the table of defendant's machine than on that of the other, being from one-sixteenth to one-eighth of an inch on the former, and one-sixty-fourth of an inch on the latter; but the strips fed into the respective machines evidently travel "in one direction" until their ends are gripped, and since the edges are held between the two members of the conveyer of the patented machine and between the wedge-shaped strip and intermediate shoe of the other, it cannot be that such slight difference in intervening space as this affords opportunity for material change in direction of the veneers thereafter in either machine.

[3] We are mindful of the expert testimony concerning the effect of the lateral rollers, especially of those whose axes are inclined to the plane of movement of the conveyers, of the patent in suit, and also of the converging conveyers and compression rollers of defendant's machine, upon the movement of veneer strips passing between them; but in view alone of the limited space, just pointed out, in which lateral movement is possible in respect of any of the passing veneer strips, it is most difficult to see why the edge-uniting mechanism of defendant's machine is not in its principle of operation substantially the same as, and so in the sense of the patent law an equivalent for, the corresponding mechanism of the patent in suit. Defendant's use of conveyer chains disposed in converging lines with an intervening wedge and all coacting with compression shoes and rollers, and so in effect making a unitary edge-uniting mechanism, was to change the form rather than the substance of the edge-uniting characteristics of the Boenning invention, and confessedly not to produce a new result. If this does not amount to infringement, it is hard to conceive of what would. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict, 151 Fed. 585, 591, 592, 81 C. C. A. 129 (C. C. A. 2d Cir.); Delaware Steel & Tube Co. v. Shelby Tube Co., 160 Fed. 928, 930, 88 C. C. A. 110 (C. C. A. 3d Cir.); Schiebel Toy & Novelty Co. v. Clark, 217 Fed. 760, 771, 133 C. C. A. 490, and citations (C. C. A. 6th Cir.); Hoyt v. Horne, 145 U. S. 302, 309, 12 Sup. Ct. 922, 36 L. Ed. 713; Wayne Mfg. Co. v. Bendow-Brammer Mfg. Co., 168 Fed. 271, 278, 93 C. C. A. 573 (C. C. A. 8th Cir.). And see Paper Bag Patent Case, 210 U. S. 419 to 422, 28 Sup. Ct. 748, 52 L. Ed. 1122. It is vain to say,

as one of defendant's experts in substance states, that there is a slight distortion in the movement of blanks traveling in defendant's machine before a straight line is reached and then admittedly followed; for if this takes place in that machine it confessedly also occurs to some extent in the other, the difference being only in negligible degree, and this is not enough to escape infringement. Black, the inventor of the opposing patent, could not definitely state what took place in defendant's machine in the respect mentioned, though he always instructed the operator to "keep the veneer about an eighth of an inch apart when it entered the machine," but that when the material was placed against the central guide upon introducing it into the machine "it would be close because there is nothing to separate it in our machine." Upon all these considerations we are persuaded that Prof. Cooley was right, when he said:

"* * * That in any practical sense, having in mind the work which the machine must perform, the two constructions are substantially alike, and that in the actual forcing of the blanks together and in joining them with a tape, not only are the mechanisms performing the operations substantially the same, but these mechanisms function in the same or substantially the same way. * * *"

[4] We do not overlook the insistence that the prior art requires the Boenning claims to be limited to the exact devices they call for. Counsel adduce a number of patents showing mechanisms designed, for instance, to unite edges of boards through application of glue, as also devices intended for other purposes and similar in a sense to other parts of the Boenning mechanism; yet we do not find reference to any previous invention that was adapted to the successful union of the edges of veneers. This is recognized by both sides as a useful art; and, through scarcity of the better classes of timber, the needs of the art prior to the invention in suit resulted in a demand for mechanical means effectively to unite the edges of narrow as well as wide strips of veneer. Boenning appears through his invention to have been the first to accomplish this end, although he did so through a combination of elements that were old in other and distinct arts more or less remote; and while such a patent cannot be regarded as a primary invention, nevertheless, the patentee made a material advance in the veneer edge-uniting art and his claims are therefore entitled to a range of equivalents commensurate with his invention. Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict, supra, 151 Fed. 591, 81 C. C. A. 129; Paper Bag Patent Case, supra, 210 U. S. 415, 28 Sup. Ct. 748, 52 L. Ed. 1122; Schiebel Toy & Novelty Co. v. Clark, supra, 217 Fed. 768, 133 C. C. A. 490.

[5] It is said that the claims in suit are to be limited by reason of what happened to claim 19 of the original application in the Patent Office. Of this it is sufficient to say that as we understand the contents of the file wrapper the claim was voluntarily canceled by the inventor and his act is in consequence lacking in any element of estoppel. Vrooman v. Penhollow, 179 Fed. 296, 305, 306, 102 C. C. A. 484 (C. C. A. 6th Cir.). It is also said that the plaintiff did not purchase the Boenning patent for purposes of use, but of suppressing competition. This is

not sustained by the proofs, and, moreover, it is settled that an inventor receives through his patent, and of course may assign, the right to exclude others from its use for the time prescribed by the statute. Paper Bag Patent Case, 210 U. S. 425, 28 Sup. Ct. 748, 52 L. Ed. 1122.

It follows that, with one exception presently to be mentioned, the claims in suit must be held to be infringed; indeed, the defense mainly relied on in trial and argument amounts to an admission of infringement unless the claimed omission of an element without substitution is sustainable. What we have already said abundantly shows that we do not think the defense was made out. The defendant's expert forcefully points out one or two elements which seem to have been omitted from claim 14; but, in view of the rulings upon the other claims in suit, the effect of such omission need not be determined.

The decree of dismissal must be reversed, and the cause remanded, with costs, and with direction to enter a decree finding infringement of all the claims in suit, except claim 14, and to allow the usual injunction and accounting.

