RITTER et al. v. VENEER MACHINERY CO.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1918.)

No. 2512.

1. PATENTS ⬥⟿238—INFRINGEMENT—SUBSTITUTION OF EQUIVALENTS.

If defendant shows the deletion of one element, without substitution, it escapes infringement, notwithstanding plaintiff be something of a pioneer, and as such entitled to a considerable range of equivalents.

2. PATENTS ⬥⟿328—INFRINGEMENT—ESSENTIAL ELEMENTS.

Boenning patent, No. 709,864, claims 4, 5, 10, 12, and 15 for a machine for edge-uniting veneers is so far basic as to be entitled to lay claim to the essential so-called feeding parts of both the Black patent No. 1,010,846, and defendant's machine, manufactured substantially in accordance with its teaching, and to entitle plaintiff to a decree restraining infringement and for an accounting.

3. PATENTS ⬥⟿328—ANTICIPATION—MACHINE FOR EDGE-UNITING VENEERS.

Boenning patent, No. 709,864, for a machine for edge-uniting veneers, held not anticipated, as the prior devices were in another art.

4. PATENTS ⬥⟿328—INFRINGEMENT—SUBSTITUTION OF EQUIVALENT PARTS.

Black patent, No. 1,010,846, for a machine for edge-uniting veneers, and defendant's machine, manufactured according to its teaching if possessed of invention, make only minor improvements on the Boenning patent, No. 709,864, claims 4, 5, 10, 12, and 15, and do not eliminate one element of that patent without providing a substitute.

Appeal from the District Court of the United States for the District of Indiana.

Suit by the Veneer Machinery Company against Fred A. Ritter, doing business as the Batesville Furniture Company, and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Samuel Dowden, of Indianapolis, Ind., for appellants.
Fred L. Chappell, of Kalamazoo, Mich., for appellee.

Before BAKER, KOHLSAAT, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge. Appellee brought this suit to restrain appellant from infringing claims 4, 5, 10, 12, and 15 of patent No. 709,864, granted September 30, 1902, to W. M. Boenning, and for an accounting. These claims had previously been sustained by the Circuit Court of Appeals for the Sixth Circuit in Veneer Machinery Company v. Grand Rapids Chair Company, 227 Fed. 419, 142 C. C. A. 115, and were also upheld by the District Court. The subject-matter of the patent is a machine for edge-uniting veneer strips. This was formerly accomplished by hand—a very tedious process. One of the chief incentives to the manufacture of veneer strips grows out of the increasing scarcity of choice wood, whereby there is difficulty in procuring material suitable for structural purposes, such as making doors, furniture, and the like, and for other

purposes. By the use of veneers this difficulty is practically over-come. So far as the record shows, Boenning was the first to con-ceive a machine for the production if this article of commerce. It has now arrived at great proportions in the building and furniture trades, as well as many others. The machine and its operation is set out in much detail in the patent, as well as in said prior Court of Appeals suit, and need not be gone into with such particularity as might otherwise be required at this time.

Briefly, the alleged infringing device is manufactured substantially in accordance with the teaching of the patent to Black, No. 1,010,846, for a machine for edge uniting veneers, granted December 5, 1911, and is practically the infringing machine restrained in the Sixth Circuit case above cited. The genius of the patent in suit is expressed in claim 4, which reads as follows, viz.:

"4. In a device for edge-uniting two blanks of veneer or similar material, means for carrying said blanks in one direction, mechanism tending to force one of said blanks at an angle to the line of travel of said means and a dis-tributer for placing a strip of adhesive material above the joint between said blanks."

The specification reads in part as follows, viz.:

"In accordance with the present invention, two strips or blanks of veneer, each having a planed or otherwise trued edge, are brought in contact with a revolving cylinder or roller supplied with glue, so that each trued edge will receive its proper amount. The blanks are then placed on a table in front of and forming part of the apparatus, so that the trued edges will lie adjacent to one another and project over the upper surface of a conveyer in the same plane with the upper surface of the table and moving toward the rear thereof. The blanks are moved in the direction of the travel of the conveyer, until their ends contact with the upper part of the conveyer, which is suspended im-mediately above and in line with the lower part. The two parts of this con-veyer are moved at the same speed and the lower part is so shaped and sup-ported as to form a solid bed, while the upper part is yieldingly held in con-tact therewith, thus forming a combined conveyer and press for the blanks. A strip of suitable material, such as muslin or paper, on a spool or reel, is arranged so as to pass over a glue-distributing roller or cylinder and lie against and move with the upper portion or part of the conveyer, with the adhesive side down, to lie over the joint between the two blanks, tending to couple or unite them. The blanks, when caught in the jaw formed by the two portions of the conveyer, are carried between four sets of rollers—two lower and two upper sets. The lower sets of rollers are driven at the same speed with which the conveyer moves, while the upper sets are merely idlers, so mounted as to be yieldingly held in contact with the blanks, to give them a severe pressure. The upper and lower sets of rollers on one side are arranged so that their axes are at right angles to the line of travel of the conveyer, thus holding and guiding the blanks passing between them straight. The other two sets are arranged so that their axes may be shifted, and they will prefer-ably be arranged so that they will tend to force the blank passing between them forward and toward the other blank, so that the adjacent edges of said blanks will be brought in close contact, thus forcing out the superfluous amount of glue between them. * * * "

Figure 1 of the drawings will suffice to illustrate the machine so far as here essential:

Fig. I.

Claim 4 of Black likewise expresses the genius of the Black patent. It reads as follows, viz.:

"4. In a machine of the class described, the combination of a table, companion endless friction faced members for conveying the work along the table, at least one of which members travels in an oblique line, whereby the work is simultaneously fed forward and crowded together by the same operation of the same members, means for holding the work in engagement with the companion endless members, whereby the work is conveyed by frictional engagement therewith, and a nonyielding surface intermediate the members for

preventing the bending of the edges of the work during the feeding and crowding operations, substantially as described."

"The operation," says the specification, lines 10 to 31, page 149, is as follows:

"The strips of veneer are fed in upon either side of a channeled guide member 63, and when they are engaged by the belt they are fed forward underneath the compression rollers, and at the same time, owing to the angle at which the belts are traveling, they are fed toward one another whereby the edges are brought into close engagement. The strip will travel underneath the shoe 29, which is of sufficient width to overlie the edge of each, and will be thus prevented from overlapping one another during the feeding operation. When the strips are brought into position where they pass underneath the roller 34, the strip of tape from the reel 53 is adhered to the strips along the adjoining edges, thus uniting the two sections together. After the tape has been applied, the strips are fed on until they have passed entirely beneath the adhering roller and out of the machine."

_fig. 2.

Figure 1 of the Black drawings shows the alleged two-element feeding device of Black.

The three main elements of the patent in suit are the conveyer and crowder, constituting the so-called feeding features and the taper, whereby the blanks are glued together along their entire adjacent edge. With the latter, we need waste no time. It is one of the well-known means for distributing adhesives to backing strips or other objects. The patent in suit applies the glue after the strip is placed, while Black prepares a strip glued before attaching.

Appellant's main defense rests upon the claim that Black has constructed a machine which accomplishes with two elements what Boenning requires three to accomplish, and that without providing a substitute for the alleged eliminated feature. It will be seen, from the claims and the drawings, that Boenning makes provision for two distinct movements in preparing the blanks for so-called taping—one the act of conveying the veneer blank to position for taping, and then onward through the machine by means of traveling endless chains, which at first frictionally advance and then seize it between them, and firmly hold it; the other, the act of crowding the veneers firmly together on their trued abutting edges, so that the edges may be firmly and closely united and freed from surplus glue as they pass on into and through the drying chamber.

[1, 2] The Black patent provides two endless moving chains or belts which travel slightly toward each other, being appreciably further apart at their front end than at the rear, converging as they go back, until they almost contact, thus combining, as it will be seen, the conveyer and crowding movements in one. Thus, while being ad-

DRAWING OF ALLEGED INFRINGING MACHINE.

FIG. 2.

vanced, the blanks are crowded together, and, when completely brought together along their whole adjacent trued edges, they proceed in a straight line; i. e., at right angles to the front edge of the table, as in Boenning's. The alleged infringing device differs somewhat from Black. For instance, it, in some instances, substitutes sliding boxes for rollers in such a manner as to secure substantially the same action, and makes other changes, without varying materially the essential principles or working of the Black machine. If appellant is right in claiming the deletion of one of Boenning's elements without substitution, it escapes infringement, notwithstanding Boenning be something of a pioneer, and as such entitled to a considerable range of equivalents. This is too well settled to require citation of authorities. But is the claim sustainable? If it shall prevail, it must be plainly established, in view of Boenning's service to the art. It is evident that Black both advances and crowds the blank, on the same principle as Boenning. His converging chains are carried by rollers which operate the chains. The blanks are started from the front of the machine, with their trued edges abutting against a guide between them or against each other. Through the action caused by the placing of certain of the rollers at an acute angle calculated to force the passing blank rearward and toward its companion blank, the two are

crowded into contact, and are then glued. This guide may vary in form and position and is not new. Is the converging chain a one-piece device or is it the equivalent of Boenning's conveyer and crowder? Mortimer E. Cooley, appellee's expert, says:

"If any question arise as to the equivalency of these rollers to the conveyer chains (appellant's), it is only necessary to consider that the conveyer chains moving in a straight line are merely rollers of an infinite radius, in the same sense that a rack which engages with a pinion is a gear wheel of infinite radius. * * * Either can be substituted for the other without change of function."

"Mechanism tending to force one of said blanks at an angle to the line of travel to said means is found in the complainant's (appellee's) patent in the upper and lower sets of three rollers, each of which have their axes inclined to the direction of movement of the veneer blanks through the machine; that is, inclined at an angle to the fore-and-aft axis of the machine."

In the defendant's (appellant's) machine:

"The two conveyer chains, together with their respective sets of three compression rollers and shoes immediately above, are each inclined at an angle to the fore-and-aft axis of the machine. Thus there exists, in the defendant's (appellant's) machine, mechanism tending to force, not only one, but both, of said blanks, at an angle to the line of travel of said means."

As above noted, the angle is too slight to affect the general result. The conveyer chains, compression rollers, and shoes of appellant's machine contain and perform the precise functions of appellee's means for advancing and crowding the veneers. The appellant's endless movable beds, standing to one side of the wedge-shaped portion of the table, intermediate the two chains, together with the shoe above it, perform the same guiding functions that the appellee's conveyer chains do. They hold the abutting edge of the veneers in fixed relation to each other, to prevent overlapping; the wedge-shaped parts however, being stationary, except as to relative movement between these parts and the traveling bed. The rollers are to one side of a fixed bed, the relations of which are, however, of such a nature as to accomplish the same result as is produced by the mechanism of the patent in suit. Thus, we find no merit in the claim made by appellant to the elimination of one element of the appellee's machine without substitution.

We do not deem it necessary to discuss at length the actuating means of the invention, nor the distributing means. We are of opinion that appellee's invention is of very considerable merit, and so far basic as to be entitled to lay claim to the essential so-called feeding parts of both the Black patent and the alleged infringing machine, and therefore entitled, in the absence of other sufficient barring causes, to the relief prayed for.

[3, 4] The appellant claims as anticipations, as follows, viz.:

The English patent to Davidson & Thom, No. 72, granted in 1892, for improvements in and relating to the manufacture of veneer fabrics, for decorating walls, ceilings, etc., calls for an endless belt over which the backing fabric for the veneers passes, and also for one or more pairs of presser rollers for pressing the veneers and cemented fabric together as they pass between such rollers. It does not specify or claim means for uniting the edges of the veneers, nor for crowd-

ing the veneers close together. The specification says that the veneer is laid upon the backing fabric in continuous sheets, by hand, so that this may be done by an automatic continuous feed mechanism, such as is ordinarily used for feeding sheets of paper in printing machines. This patent was not before the Circuit Court of Appeals in Veneer Machinery Co. v. Grand Rapids Chair Co., supra.

The Ward patent, No. 647,056, dated April 10, 1900, which is a machine for manufacturing "backing," calls for a plurality of endless belts. These belts are four in number, and move vertically with respect to the movement of the strips or slats of wood upon the bed of the machine, and serve only to exert a downward pressure upon the slats. Their forward movement is accomplished by toothed feeding wheels and secondary feed wheels; the latter forcing the slats between a pair of depression rollers where the glue-coated paper is applied. None of these wheels or rollers has a lateral movement, as in the patent in suit. The slats move successively upon the bed and are crowded together, edge to edge, by their being forced against and between the depression rollers by the secondary feed wheels. This patent was considered by said Circuit Court of Appeals for said Sixth Circuit.

Patent to A. L. Garver, No. 542,156, issued July 2, 1895, relates to a machine for applying a strip of cloth, leather, or other material to the backs of books, or around the edges of books, to reinforce the binding, etc. The device is provided with an endless feed apron or belt, the upper portion of which passes above the table or bed of the machine and between two pairs of presser rolls. One of these sets of rollers is situated at a little distance in front of the other, and each set comprises two rollers, one above the other. The axes of the first pair of rollers are obliquely of the movement of the feed apron; the left-hand ends being a little in advance, so as to give the rollers a somewhat lateral movement to the right. These rollers are used when it is desired to fold the strip over the edges of the book, being at other times thrown out of operative position. For this class of work a tape-folding and tape-guiding device is provided, which is attached at the right of the feed apron, and which also serves as the right-hand guide for the book as it is fed into the machine. In operation, the book, in its closed condition, is placed upon the feed apron and between the left and right hand guides, with the edges of the book over which the tape is to be folded lying toward and in the tape-folding and right-hand guide. The feed apron and oblique rollers carry the book forward, and the rollers at the same time, by reason of their lateral movement, in co-operation with the left-hand guide and its devices, tend to crowd the book to the right and keep it within the tape-folder and guide for the purpose of applying the tape. This patent was not before the Court in the Sixth Circuit.

Viewed in the light of these patents, appellants insist that appellee's patent is to be limited to the structure of the Boenning patent, and not entitled to a range of equivalents broad enough to include the alleged infringing device. This we do not concur in. The prior art fails to anticipate the patent in suit. While the former contains devices for the performance of ingenious approaches to the veneering

act, they are all in another art. So far as we can find from the record, Boenning alone conceived the machine of the patent in suit. The prior art is called into service, to be sure, but speedily loses its identity. The combination is Boenning's. Black has made some improvements, as has the appellant's machine. If possessed of invention, they are minor improvements on the patent in suit, and only such. In view of the foregoing, there is no need to consider further the question of estoppel growing out of appellant's assertion that Boenning estopped himself from claiming the elements of what it calls a two-part or element device, by action taken before the examiner. Appellant has not eliminated one element of the patent in suit without providing a substitute. Such was also the judgment of the Court of Appeals of the Sixth Circuit, as above shown, in substance.

We discover no merit in the defense of estoppel. The judgment of the District Court is affirmed.