## SPARKS–WITHINGTON CO. v. JAY et al.

## JAY et al. v. SPARKS–WITHINGTON CO.

(Circuit Court of Appeals, Sixth Circuit.   January 14, 1921.)

Nos. 3311, 3312.

1. **Patents** ☞328—1,067,814, **claim 1, for vacuum tank for engines, not infringed.**

   Claim 1 of the Higginson & Arundel patent, No. 1,067,814, for a vacuum tank for automobile and other internal combustion engines, not being entitled to the broad construction given a patent proving to be a pioneer in the practical art, *held* not infringed by a tank in which the fuel supply is introduced directly into the top of the vacuum chamber without using a check or return valve in the supply pipe as in the patented device.

2. **Patents** ☞53—**Anticipating device does not lack invention because not brought to highest degree of perfection or not successful commercially.**

   A device described in a trade paper and relied on as anticipating a patent should be tested by the rules applicable to a patent, and does not lack invention merely because the inventor did not successfully bring his art to the highest degree of perfection, nor because without changes or additions thereto it could not be successful commercially.

3. **Patents** ☞328—1,134,457, **claims 1, 2, 4, and 5, and 1,132,273, claims 1 and 3, for engine vacuum tanks, held invalid, and claim 4 not infringed, if valid.**

   Claims 1, 2, 4 and 5 of the Jay patent, No. 1,134,457, and claim 1 and 3 of the Jay patent, No. 1,132,273, for vacuum tanks for automobile and other internal combustion engines, *held* to involve no invention over the prior art; and claim 4 of the first-mentioned patent *held* not infringed, if valid.

4. **Patents** ☞328—1,132,273, **claim 13, for engine vacuum tank, not infringed.**

   Claim 13 of the Jay patent, No. 1,132,273, for a vacuum tank for internal combustion engines, *held* not infringed if valid.

5. **Patents** ☞328—1,132,273, **claims 9 and 14, for engine vacuum tank, held valid and infringed.**

   Claims 9 and 14 of the Jay patent, No. 1,132,273, for a vacuum tank for internal combustion engines, containing means for alternately connecting the vacuum chamber with the exhaust means and with the atmosphere, and means controlling communication between the vacuum chamber and lower tank, adapted to be opened by gravity flow, *held* valid and infringed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

270 F.—29

**6. Patents ⊕=26(1)—Combination of claims old in the art may involve invention.**

That each element of a claim is old and in the same art does not necessarily preclude invention in the combination of such claims.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by Webb Jay and another against the Sparks-Withington Company. From a judgment for plaintiffs for partial relief (258 Fed. 45), both parties appeal. Affirmed.

Lynn A. Williams, of Chicago, Ill. (Clifford C. Bradbury and Robert M. See, both of Chicago, Ill., on the brief), for plaintiffs.

Charles S. Burton and Geo. L. Wilkinson, both of Chicago, Ill., for defendant.

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of United States letters patent No. 1,067,814 to Higginson & Arundel and Nos. 1,132,-273 and 1,134,457 to Jay, upon vacuum tanks for internal combustion engines (with special reference to automobile engines), by which the gasoline is raised from the main tank, located below the carburetor, to a point above the same, whence it is supplied to the carburetor by gravity. The claims in issue are No. 1 of Higginson & Arundel, Nos. 1, 3, 9, 13, and 14 of the earlier numbered Jay patent, and Nos. 1, 2, 4, and 5 of Jay's patent of later number. The District Court found that each of the claims in suit contained a degree of invention, but that each was entitled to but a narrow construction, and that, so construed, neither of the claims in suit was infringed, except claims 9 and 14 of the earlier numbered Jay patent (D. C.) 258 Fed. 45. Each party has appealed.

In reaching this conclusion, the court below followed the decision of the District Court for the Northern District of Illinois, in a suit against other alleged infringers by means of other devices, which suit involved the same patents and the same claims here in suit. Jay v. Weinberg (D. C.) 250 Fed. 469. The decree of that District Court has been later affirmed by the Circuit Court of Appeals of the Seventh Circuit. 262 Fed. 973.

Our conclusions lead to an affirmance of the decree below, but not in all respects upon the grounds which moved the District Court. In view of the history and discussion contained in the reported decisions to which we have referred (including that of the court below), we deem it unnecessary, for the most part, to do more than state without elaboration the specific conclusions we have reached and the grounds thereof.

[1] 1. The Higginson & Arundel patent was applied for May 23, 1912, and issued July 22, 1913. Its device includes, broadly, a suction chamber to which the liquid fuel is conveyed by a conduit from the main fuel tank, passing up through the bottom of the suction cham-

ber, together with a lower or auxiliary tank into which the liquid is conducted from the suction chamber and thence to the carburetor. When the suction stops, by the seating of the valve in the passage communicating with the source of suction (which may be the carburetor inlet or the engine cylinder), due to the rising of the float in the suction chamber, the air which is entering that chamber through an inlet directly communicating therewith permits the liquid fuel to flow therefrom into the lower chamber and so to the carburetor. Claim 1 contains, as an element, "means for simultaneously isolating the suction chamber from the source of suction and from the main tank, and placing it into communication with the auxiliary vessel" (the lower chamber). The means referred to is a valve in the conduit from the main supply tank to the suction tank, atmospheric pressure in the suction tank (when the suction is released) closing this valve and opening the valve in the connection between the suction tank and the lower tank. Defendant introduces the fuel supply directly into the top of the vacuum chamber (instead of passing it up through the bottom of the suction chamber), and thus has no need for, and in fact does not use, a check or return valve in the supply pipe, or its equivalent. Only that broad construction which might be given to a patent which had proved a pioneer in the practical art, as this one did not, would justify considering the high location of the conduit discharge as the equivalent of the omitted check. Such omission of this element defeats infringement. Cimiotti Co. v. American Co., 198 U. S. 399, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100; Veneer Co. v. Grand Rapids Co. (C. C. A. 6) 227 Fed. 419, 142 C. C. A. 115. It is thus unnecessary to consider whether the claims in question contain invention.

2. A substantial part of the controversy relates to the extent to which the so-called Tice publication is a part of the prior art. In the June, 1911, issue of the trade paper Motor, under the title "Pressure Feed Without Pressure," Tice published an elaborate and illustrated description of a suggested two-chamber vacuum tank for automobiles, employing, for the most part, the general features found in Higginson & Arundel, disclosing, however, a float in the lower chamber as well as in the suction chamber. The article contained "data as to weights of valve spindles, valves, etc., and sizes of the floats," based on the specific gravity of the various elements concerned.

Plaintiff contends that this device is shown, by actual test, to be inoperative and useless. Tice built only one, which he used for a day or two, and then gave it no further attention. Three others have been made, one by defendant in the Weinberg Case, one by plaintiff, and one by defendant in this case; each of the three being an illustrative exhibit for the litigation. Apparently the chief infirmity of Tice's device lay in the fact that the valve in the discharge from the vacuum chamber to the lower chamber opened upwardly with the suction, instead of downwardly by gravity, and so tended to be slightly open when the suction is strong, thus theoretically tending, to some extent, to draw gasoline from the lower chamber to the vacuum chamber. The carrying of two floats, one in each chamber on a common stem, also involves difficulties. It is true that the structure as made by

plaintiff in exact accord with Tice's prescribed dimensions could be operated only under a very limited range of vacuum, and so was not adapted to normal road conditions. Defendant's reproduction of the device, which varied the size and weight of the floats sufficiently to compensate for the variation in the specific gravity of the elements actually employed, is shown to have worked well within a much broader range of vacuum, and to have been actually and successfully operated under normal road conditions on a run from Jackson, Mich., to Cleveland, Ohio, which is approximately 300 miles.

[2] We think the Tice device, as disclosed by him, cannot be pronounced inoperative in a patentable sense, although under many conditions likely to be met it would fail to function, and thus could not be successful commercially. But, testing the disclosure as we think we should by the rules applicable to a patent, the device, as described, did not lack invention merely because the inventor did not successfully bring his art to the highest degree of perfection, nor because, without changes in or additions thereto, it could not be successful commercially. Telephone Cases, 126 U. S. at page 536, 8 Sup. Ct. 778, 31 L. Ed. 863; Proudfit Co. v. Kalamazoo Co. (C. C. A. 6) 230 Fed. 120, 128, 144 C. C. A. 418. And see Loom Co. v. Higgins, 105 U. S. 580, 586, 26 L. Ed. 1177. In our opinion, the Tice disclosure contained invention. It antedated both the Jay inventions, as to which both Tice and Higginson & Arundel are part of the prior art. It is not important to determine priority as between these two last-named inventions.

[3] 3. The Jay patent, No. 1,134,457, issued April 6, 1915. The device of this patent has but a single chamber. Although the patent was issued later than the other Jay patent, it was earlier applied for. In our opinion, claims 1, 2, and 5 plainly lack invention, in view of the prior art. The elements specially stressed by plaintiff as involving invention are: (a) That the source of the suction is the engine intake; and (b) that the air inlet to the vacuum chamber is valve-controlled, as that of Higginson & Arundel was not. It seems enough to say that both these elements are distinctly found in Tice, and that each of these claims would be infringed by the Tice structure.

Claim 4, however, calls for "valve devices by which the flow of the liquid through the first-mentioned conduit is permitted only in the direction toward the carburetor." This does not impress us as involving invention over the prior art. The reference is evidently to the "check valve S" in the conduit J, leading from the vacuum tank to the carburetor; this latter conduit being treated as a constituent part of the "liquid conduit" from the fuel supply tank, "by which fuel is delivered to the carburetor." This check valve S would seem more naturally comparable with the check valve shown in the upper left-hand corner of Tice's diagram, which is directly in the conduit pipe and is expressly designed to prevent the fuel backing down to the main supply tank (if it cannot return to the main tank, it must go toward the carburetor, if anywhere), rather than with Tice's valve, which controls the communication between the suction tank and the lower tank; and, if this is the meaning of the claim, it would read upon Tice  But, even if claim 4 be thought to involve invention, it is not, in our opinion,

infringed. It was found in the prior art (Higginson & Arundel showed substantially the same thing, save, perhaps, in one respect, and in this Jay was compelled to destroy the distinction in order to make his device work) ; and the claim is at best limited to a very narrow range of equivalents. The single tank of this patent never came into use. We think that defendant's valve *19*, which when the suction stops discharges the liquid from the upper into the lower chamber, does not perform the function of plaintiff's check valve *S*, in the pipe leading directly from his single tank to the carburetor fully enough to make the close equivalency required in such a patent, and that thus defendant has no "valve devices" answering the claim in question.

[4] 4. The Jay double tank patent, No. 1,132,273, issued March 16, 1915. This patent, as before said, while issued earlier than the single tank patent, was later applied for. It seems clear that claims 1 and 3 involve no invention over the prior art. Each plainly reads upon Tice. Claim 13, however, after specifying the valve controlling the communication between the vacuum chamber and the vacuum producing means, and the valve controlling the atmospheric inlet, contains, as an element, "mechanism for their simultaneous operation, to close one when the other is opened and to open the first when the second is closed, said mechanism comprising a lever," together with other details of mechanical operative means. Assuming for the purposes of this opinion that this element distinguishes claim 13 from the prior art, the claim is not, in our opinion, infringed by defendant. Indeed, plaintiff does not seem strongly to urge such infringement.

[5] With respect to claims 9 and 14, the situation is essentially different. Claim 9 contains the elements of "means for alternately connecting said supply receptacle [vacuum chamber] with the exhaust means and with the atmosphere and means controlling communication between said [vacuum chamber] and said [lower tank], adapted to be opened by gravity flow from said supply to said auxiliary receptacle [lower tank]." Claim 14 also contains the substance of this last element. Its inclusion distinguishes both claims from anything in the prior art. It distinguishes from Tice in substituting a gravity-controlled valve for his upwardly opening suction-controlled valve, and a simple, single form for his complex and double structure. It distinguishes to an even greater extent from Higginson & Arundel, not only in substituting for the latter's continuous connection with the atmosphere through the constantly open air inlet and intermittent connection of the vacuum chamber with the source of suction, an actual and effective alternation of atmospheric pressure and vacuum, but also in substituting a gravity-operated valve in the communication between the vacuum and lower chambers for Higginson & Arundel's more complicated method of control by diaphragm and compression springs.

[6] We are not impressed with the contention that the claims we are considering involve no more than the obvious and noninventive selection of the best features disclosed by Tice and by Higginson & Arundel, together with devices previously employed in the water-lifting art. It is a mistake to suppose that the combination of these two claims was found in the water-lifting art. The vacuum lift water

pumps had no auxiliary receptacle for maintaining a gravity feed of the liquid. Their discharge was complete and always intermittent. They would have been worthless for feeding a carburetor. The mere fact, if admitted, that each element of the claim was old and in the same art would not, necessarily, preclude invention in the combination of those claims. Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034; Kellogg Co. v. Dean Co. (C. C. A. 6) 182 Fed. 991, 996, 105 C. C. A. 545.

Jay's double tank system was an entire novelty to the automobile manufacturing world, commercially speaking. Nothing substantially resembling it had ever been offered to that market. Neither Higginson & Arundel nor Tice had been heard of by any manufacturer, so far as appears. The Jay tank met with very great, and we may reasonably say extraordinary, trade acceptance and success.[1]

As always where there has been unusual commercial success, there must be inquiry whether the merit of the article or something else was the dominant cause of the success. We are not inclined to give much force to the other causes urged here. Expensive advertising or selling effort unduly to accelerate the demand is not claimed. It is said that plaintiff was manufacturing also under later patents. This is true, but these patents are in the record, and we find nothing in them that would substantially change the operation or the utility of the device. They pertain to subordinate developments and improvements, and if plaintiff had adhered to the form first marketed with only the usual refinements and perfecting, and had successfully maintained a monopoly thereon, there is no reason to think the sales would have been substantially less.

It is also said that just before 1914 the quality of the common gasoline changed so that it became necessary to raise the carburetors close

[1] The chief engineer of the Peerless Motor Company says: "The acceptance of the vacuum feed system in the automobile industry was almost like a prairie fire. It almost swept the country. I never saw anything like it." The chief engineer of the Olds Motor Works says: "I never saw anything in the automobile line which was so quickly adopted as standard equipment." Mr. Kissel, of the Kissel Motor Car Company, says that they used the pressure system, but it gave trouble "so much that we were looking around for almost anything we could get to take its place that would operate satisfactorily." They adopted the Jay vacuum system in 1914, and put it not only on new cars, but substituted it for the other system on their cars already built. "There was such a demand for these tanks that we made a special price on them * * * so that we could ship them to our customers * * * in replacing the pressure system with the vacuum system on our previously built cars." A compilation published by one of the trade papers in 1918, shows that, out of all the different makes of American cars in 1913, 65 per cent. used the gravity feed and 35 per cent. the pressure fuel feed; in 1914 58 per cent. were gravity and 41 per cent. pressure; in 1915 (the season beginning the fall of 1914) 57 per cent. were gravity and 22 per cent. pressure and 20 per cent. vacuum feed; in 1916 32 per cent. were gravity and 12 per cent. pressure and 54 per cent. vacuum; in 1917 18 per cent. were gravity, 7 per cent. pressure, and 74 per cent. vacuum; in 1918 10 per cent. were gravity, 7 per cent. pressure, and 83 per cent. vacuum. Of tanks manufactured under the patents in suit, plaintiff and its predecessor sold, in 1914, 30,000; in 1915, 239,000; in 1916, 637,000; in 1917, 689,000; in 1918 1,596,000.

to the engine, and the styles changed so that low-hung cars became fashionable, and that these two things were what drove out the gravity feed. There is a measure of truth in both of these, but they are not controlling. It may as well be said that it was the existence of the vacuum feed system which permitted the low-hung cars to become universal.

Nor was Jay's combination the immediate and mechanical response to the thought that the suction of an engine might be used for this general purpose. This broad idea had been disclosed by Schutze in France in 1902, and Goodhart in England, and Seager in the United States, in 1908. Further applications had been attempted by Harrington in 1909, by Higginson & Arundel and by Tice, in 1911, and by Jay himself in 1913. No one had succeeded in making a device that was commercially accepted or that any one now wishes to use.

We think claims 9 and 14 marked a distinct advance, and plainly involve invention. We think also that defendant's structure infringes both these claims. Indeed, infringement does not seem to be denied except by the objection that in defendant's device the movement of the atmospheric and suction valves is not simultaneous; and this objection is answered by the fact that the call for simultaneous action found in the third and other claims is omitted from the ninth and fourteenth claims. It does not seem denied that defendant employs the atmospheric pipe called for by the fourteenth claim.

The decree of the District Court is affirmed. As both parties have appealed, the costs of this court will be divided.